391 S.E.2d 614

**STATE of West Virginia ex rel. Randy Lee BOSO**

v.

**Jerry C. HEDRICK, Warden.**

No. 18877.

Supreme Court of Appeals of West Virginia.

Jan. 26, 1990.

Randy Lee Boso, pro se.

C. Terry Owen, Charleston, for Jerry C. Hedrick.

PER CURIAM:

The defendant below, Randy Lee Boso, appeals from an order of the Circuit Court of Marshall County, entered on December 17, 1987, denying him relief in habeas corpus.

Mr. Boso was indicted on three felony counts of burglary, breaking and entering, and aiding in concealing stolen property. On September 20, 1983, upon a trial by jury, Mr. Boso was convicted of burglary.

Following the defendant's conviction, the State filed a recidivist action, and a trial was conducted. Mr. Boso previously had been convicted of delivery of a controlled substance and breaking and entering, both of which were felony convictions. On October 5, 1983, Mr. Boso was sentenced to life imprisonment pursuant to W.Va.Code, 61–11–18 (1943).[1]

On July 18, 1984, Mr. Boso filed a petition for appeal from the judgment of the trial court. By order entered on November 13, 1984, this Court refused the petition for appeal. A second petition for appeal was filed by Mr. Boso on November 27, 1984. We also refused that petition on December 5, 1984.[2]

Mr. Boso filed a petition for a writ of habeas corpus in the Circuit Court of Marshall County on February 21, 1985, raising the same issues asserted in the petitions for appeal. By order entered on February 26, 1985, the circuit court dismissed the petition.

Mr. Boso filed another petition for a writ of habeas corpus with the circuit court. On June 25, 1986, Mr. Boso petitioned this Court for a writ of mandamus to compel the circuit judge to act on his petition. We denied the petition for a writ of mandamus on July 3, 1986.

Subsequently, the Honorable Richard A. Warmuth and the Honorable Steven D. Narick voluntarily recused themselves. By order entered on August 20, 1986, we transferred this matter to the Honorable W. Craig Broadwater pursuant to the provisions of W.Va. Const. art. VIII, § 3.[3] Evidentiary hearings were conducted on December 31, 1986, January 16, 1987, and June 10, 1987. By order entered on December 17, 1987, the circuit court denied the writ and dismissed the case. It is from that order that Mr. Boso appeals.

I.

The principal assertion upon which Mr. Boso relies is that he was denied effective assistance of counsel as guaranteed by the Sixth Amendment to the United States Constitution and W.Va. Const. art. III, § 14. Mr. Boso contends that his appointed counsel at trial was ineffective because: (1) he failed to conduct further voir dire of members of the venire who disclosed relationships with law enforcement personnel; (2) he permitted the State without objection to cross-examine him and his mother concerning his pretrial silence; and (3) he failed to offer an alibi instruction when the defense of alibi was offered at trial. Mr.

---

1. W.Va.Code, 61–11–18, provides, in pertinent part:

"When it is determined, as provided in section nineteen hereof, that such person shall have been twice before convicted in the United States of a crime punishable by confinement in a penitentiary, the person shall be sentenced to be confined in the penitentiary for life."

2. A denial of a petition for direct appeal is not a decision on the merits precluding future consideration of the issues in a habeas corpus proceeding. *Smith v. Hedrick,* 181 W.Va. 394, 382 S.E.2d 588 (1989).

3. W.Va. Const. art. VIII, § 3 provides, in relevant part: "[The chief justice] may assign a judge ... from one circuit to another[.]"

Boso also asserts that appointed appellate counsel was ineffective because his law partner represented the codefendant at trial, and because his appointed counsel appeared in court with the codefendant at his sentencing hearing.

■■■ The analysis to be applied to claims of ineffective assistance of counsel was articulated by this Court in Syllabus Point 19 of *State v. Thomas,* 157 W.Va. 640, 203 S.E.2d 445 (1974):

"In the determination of a claim that an accused was prejudiced by ineffective assistance of counsel violative of Article III, Section 14 of the West Virginia Constitution and the Sixth Amendment to the United States Constitution, courts should measure and compare the questioned counsel's performance by whether he exhibited the normal and customary degree of skill possessed by attorneys who are reasonably knowledgeable of criminal law, except that proved counsel error which does not affect the outcome of the case, will be regarded as harmless error."

*See also* Syllabus Point 2, *Scott v. Mohn,* 165 W.Va. 393, 268 S.E.2d 117 (1980). We also stated in Syllabus Point 21 of *State v. Thomas, supra:*

"Where a counsel's performance, attacked as ineffective, arises from occurrences involving strategy, tactics and arguable courses of action, his conduct will be deemed effectively assistive of his client's interests, unless no reasonably qualified defense attorney would have so acted in the defense of an accused."

*See also* Syllabus Point 10, *State v. England,* 180 W.Va. 342, 376 S.E.2d 548 (1988).

Furthermore, it is well established that a petitioner who seeks release from imprisonment by habeas corpus on the ground of ineffective assistance of counsel has the burden of proving by a preponderance of the evidence the charge made. *Carrico v. Griffith,* 165 W.Va. 812, 272 S.E.2d 235 (1980); *State v. Thomas, supra; State ex rel. Scott v. Boles,* 150 W.Va. 453, 147 S.E.2d 486 (1966); *State ex rel. Owens v. King,* 149 W.Va. 637, 142 S.E.2d 880 (1965).

We shall briefly address each of the four ineffective assistance of counsel claims raised by the defendant.

### A.

First, the defendant contends that his defense counsel was ineffective in failing to request any individual voir dire of the members of the venire who revealed relationships with law enforcement personnel. The defendant argues that no defense attorney reasonably knowledgeable in the field would have failed to conduct such voir dire under these circumstances.

■■■ We stated in Syllabus Point 6 of *State v. Beckett,* 172 W.Va. 817, 310 S.E.2d 883 (1983):

"A prospective juror's consanguineal, marital or social relationship with an employee of a law enforcement agency does not operate as a per se disqualification for cause in a criminal case unless the law enforcement official is actively involved in the prosecution of the case. After establishing that such a relationship exists, a party has a right to obtain individual voir dire of the challenged juror to determine possible prejudice or bias arising from the relationship."

In *Beckett,* we cited several cases illustrating this principle. *State v. Meadows,* 172 W.Va. 247, 304 S.E.2d 831 (1983); *State v. White,* 171 W.Va. 658, 301 S.E.2d 615 (1983); *State v. Maynard,* 169 W.Va. 564, 289 S.E.2d 714 (1982); *State v. Archer,* 169 W.Va. 564, 289 S.E.2d 178 (1982).[4]

---

**4.** In *White* and *Meadows,* this Court held that a former deputy sheriff and a former prison guard were not per se disqualified as jurors and recognized that these prospective jurors did not express any bias or prejudice on individual voir dire.

In *Archer,* one of the prospective jurors was the father of a former deputy sheriff who was still involved in law enforcement activities.

This Court held that the trial court erred in failing to strike that juror since he stated, in response to additional voir dire questions, that he would favor the testimony of law enforcement officials.

In *Maynard,* we held that a prospective juror's kinship to a magistrate did not automatically disqualify him and that there must be a showing

Here, six potential jurors responded during voir dire that they knew law enforcement officers who might be testifying at trial. Two other potential jurors also responded that they were closely related to current or prior law enforcement officers. Of these eight potential jurors, only three served on the jury. None of these three jurors, however, expressed any bias or prejudice. The trial court *sua sponte* made further inquiry of these prospective members, who stated that their relationship with a law enforcement officer would not influence his or her ability to render a fair and impartial verdict. Thus, in view of the trial court's specific inquiries, we cannot conclude that the defendant's counsel was ineffective for failing to conduct further voir dire of these three jurors.

### B.

 The defendant's second claim of ineffective assistance of counsel concerns defense counsel's failure to object to the State's cross-examination of the defendant and his mother regarding his pretrial silence. The defendant claims that this cross-examination violated his constitutional right to remain silent. The essence of the cross-examination was that the defendant claimed at trial that he was at his mother's home during the time that the crime was committed. The defendant's mother supported this story. Both were asked by the State why they had not disclosed this exculpatory information when the defendant surrendered to the police.

██ Relying on *Doyle v. Ohio*, 426 U.S. 610, 96 S.Ct. 2240, 49 L.Ed.2d 91 (1976), we held in *State v. Boyd*, 160 W.Va. 234, 233 S.E.2d 710 (1977), that cross-examining a defendant as to his failure to disclose an exculpatory story to the police while in custody prior to trial violated the defendant's privilege against self-incrimination. The essence of this rule springs from the fact that under *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), a defendant has the right to remain silent and thus should not be impeached by

of some bias or prejudice in order to disqualify

his silence. As we summarized in Syllabus Point 1 of *Boyd:*

"Under the Due Process Clause of the *West Virginia Constitution*, Article III, Section 10, and the presumption of innocence embodied therein, and Article III, Section 5, relating to the right against self-incrimination, it is reversible error for the prosecutor to cross-examine a defendant in regard to his pretrial silence or to comment on the same to the jury."

*See also State v. Grubbs*, 178 W.Va. 811, 364 S.E.2d 824 (1987); *State v. Oxier*, 175 W.Va. 760, 338 S.E.2d 360 (1985).

We recognized in *Oxier, supra*, that in *Fletcher v. Weir*, 455 U.S. 603, 102 S.Ct. 1309, 71 L.Ed.2d 490 (1982), the United States Supreme Court held the prosecutor's cross-examination of the defendant regarding his post-arrest silence did not violate *Doyle* because there were no *Miranda* warnings given. 175 W.Va. at 761, 338 S.E.2d at 361. In *Oxier*, we noted that the Supreme Court in *Jenkins v. Anderson*, 447 U.S. 231, 240, 100 S.Ct. 2124, 2130, 65 L.Ed.2d 86, 96 (1980), reasoned:

"In this case, no governmental action induced petitioner to remain silent before arrest. The failure to speak occurred before the petitioner was taken into custody and given *Miranda* warnings. Consequently, the fundamental unfairness present in *Doyle* is not present in this case. We hold that impeachment by use of prearrest silence does not violate the Fourteenth Amendment."

Thus, the *Doyle-Boyd* rationale does not apply in the instant case.

Here the defendant turned himself in the day after the crime was committed. The police testified that he was not asked to give a statement and was, therefore, not given any *Miranda* warnings. The defendant testified at the habeas hearing that he was given a *Miranda* warning. The trial court at the habeas hearing concluded that no *Miranda* warnings were given and, therefore, the *Doyle-Boyd* principle did not apply. We concur with the trial court's analysis.

him as a juror.

The defendant's claim with regard to the cross-examination of his mother presents a different issue. She was not a suspect and was never given *Miranda* warnings. Thus, she was not entitled to application of the *Doyle-Boyd* principle. This error does not rise to a constitutional dimension and as we explain in Part III, *infra*, constitutional error is the only type of error warranting post-conviction habeas corpus action.[5]

### C.

■ Mr. Boso's third claim of ineffective assistance of counsel concerns his defense counsel's representation of the codefendant at his sentencing. Mr. Boso contends that this type of conflict of interest is per se ineffective assistance under the standard set forth in *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).

■ In Syllabus Point 3 of *Cole v. White*, 180 W.Va. 393, 376 S.E.2d 599 (1988), this Court stated:

"When constitutional claims of ineffective assistance of counsel, due to a conflict of interest are raised, either on direct appeal of a criminal conviction or in a habeas corpus proceeding founded on similar allegations, we apply the standard of review embodied in Syllabus Point 3 of *State ex rel. Postelwaite v. Bechtold*, 158 W.Va. 479, 212 S.E.2d 69 (1975), *cert. denied*, 424 U.S. 909, 96 S.Ct. 1103, 47 L.Ed.2d 312 (1976):

" 'The joint representation by counsel of two or more accused, jointly indicted and tried is not improper *per se;* and, one who claims ineffective assistance of counsel by reason of conflict of interest in the joint representation must demonstrate that the conflict is actual and not merely theoretical or speculative.' "

Here, Jeffrey Kessler was appointed to represent Mr. Boso as co-counsel on Mr. Boso's appeal. Mr. Kessler is the law partner of Rodney Berry, who represented Thomas Opic, the codefendant who testified against Mr. Boso. Mr. Kessler appeared as counsel on behalf of Mr. Opic at his sentencing. Mr. Boso asserts that this demonstrates a conflict of interest.

However, this type of joint representation is not improper per se. Mr. Boso does not demonstrate any actual conflict, nor is any conflict apparent from the record. Thus, Mr. Boso has failed to meet the requirements set forth in *Cole*. We are not cited, nor have we found, a case where the mere fact that an appointed appellate attorney's partner represented, or the appellate attorney himself had minimal contact with, the accused's codefendant at trial renders the appellate attorney's assistance on appeal ineffective.

### D.

■ Mr. Boso's final ineffective assistance of counsel claim involves the trial counsel's failure to offer an alibi instruction when the defense of alibi was offered at trial.

The defendant in this case was convicted of night-time burglary. The particular elements of this crime require an accused to be present at the scene of the crime. *See* W.Va.Code, 61-3-11 (1973) ("If any person shall, in the nighttime, break and enter, or enter without breaking, or shall, in the daytime, break and enter, the dwelling house ... of another...."); Syllabus Point 2, *State v. Louk*, 169 W.Va. 24, 285 S.E.2d 432 (1981). The jury in this case was properly instructed on the elements of the crime of night-time burglary, which included a finding that the defendant was present at the scene, i.e., the house broken into. Furthermore, in the jury charge, the trial judge thoroughly instructed the jury on the presumption of the defendant's innocence and the burden upon the prosecution to prove his guilt beyond a reasonable doubt. Thus, in order to find that the defendant was guilty of night-time burgla-

---

5. We note that several courts have found that given an appropriate foundation, such cross-examination of a witness, as distinguished from the defendant, may be permissible. *E.g., Commonwealth v. Egerton*, 396 Mass. 499, 487 N.E.2d 481 (1986); *People v. Dawson*, 50 N.Y.2d 311, 428 N.Y.S.2d 914, 406 N.E.2d 771 (1980).

ry beyond a reasonable doubt, the jury had to find that the defendant was present in the house at the time of the burglary.

Therefore, we find that the defense counsel's failure to request an alibi instruction did not constitute ineffective assistance of counsel since the defense of alibi under the circumstances of this case involved a question of fact for the jury to resolve in its determination of whether the State had proved Mr. Boso's guilt beyond a reasonable doubt. Other jurisdictions have also found, under the particular circumstances of the case, that the defense counsel's failure to request an alibi instruction did not constitute ineffective assistance of counsel. *State v. Elisondo,* 103 Idaho 69, 644 P.2d 992 (1982); *Williams v. State,* 464 N.E.2d 893 (Ind.1984); *Lamphere v. State,* 348 N.W.2d 212 (Iowa 1984).

## II.

■ Mr. Boso next argues that the life sentence imposed upon him under the recidivist statute, W.Va.Code, 61–11–18, violated the proportionality principle. Mr. Boso contends that the trial judge failed to make any proportionality analysis prior to imposing upon him a life sentence.

■ This Court discussed the principle of proportionality at great length in *Wanstreet v. Bordenkircher,* 166 W.Va. 523, 276 S.E.2d 205 (1981). Recognizing that the principle of proportionality has been derived from our state constitution, we stated in Syllabus Point 3 of *Wanstreet:*

 " 'Article III, Section 5 of the West Virginia Constitution, which contains the cruel and unusual punishment counterpart to the Eighth Amendment of the United States Constitution, has an express statement of the proportionality principle: "Penalties shall be proportioned to the character and degree of the offence." ' Syllabus Point 8, *State v. Vance,* [164 W.Va. 216], 262 S.E.2d 423 (1980)."

■ We stated the applicability of the proportionality principle in Syllabus Points 4 and 5 of *Wanstreet:*

"4. While our constitutional proportionality standards theoretically can apply to any criminal sentence, they are basically applicable to those sentences where there is either no fixed maximum set by statute or where there is a life recidivist sentence.

"5. In determining whether a given sentence violates the proportionality principle found in Article III, Section 5 of the West Virginia Constitution, consideration is given to the nature of the offense, the legislative purpose behind the punishment, a comparison of the punishment with what would be inflicted in other jurisdictions, and a comparison with other offenses within the same jurisdiction."

We explained in *Wanstreet* that:

"When we analyze a life recidivist sentence under proportionality principles, we are in effect dealing with a punishment that must be viewed from two distinct vantage points: first, the nature of the third offense and, second, the nature of the other convictions that support the recidivist sentence. This duality is occasioned by the fact that the punishment for the third felony conviction is an automatic life sentence regardless of the nature of the penalty for the underlying third felony." 166 W.Va. at 533, 276 S.E.2d at 212.

We emphasized that the third felony is entitled to more scrutiny than the previous felony convictions for purposes of proportionality "since it provides the ultimate nexus to the sentence." 166 W.Va. at 534, 276 S.E.2d at 212.

In *Wanstreet,* we found the recidivist life conviction to be disproportionate. It was imposed in 1967 after the defendant was found guilty of forging a $43.00 check. His two prior felonies consisted of the arson of a hay barn in 1955 and an original check forgery conviction in 1951.

The United States Supreme Court has recognized that the Eighth Amendment to the United States Constitution forbids cruel and unusual punishment and carries an implicit requirement that a sentence should not be disproportionate to the crime committed. In *Solem v. Helm,* 463 U.S. 277,

286, 103 S.Ct. 3001, 3007, 77 L.Ed.2d 637, 647 (1983), the Supreme Court stated that "[t]he constitutional principle of proportionality has been recognized explicitly in this Court for almost a century." The Supreme Court explained that

> "a court's analysis under the Eighth Amendment should be guided by objective criteria, including (i) the gravity of the offense and the harshness of the penalty; (ii) the sentences imposed on other criminals in the same jurisdiction; and (iii) the sentences imposed for commission of the same crime in other jurisdictions." 463 U.S. at 292, 103 S.Ct. at 3011, 77 L.Ed.2d at 650.

In *Solem,* the defendant was convicted of uttering no account check for $100. He had three prior convictions for third-degree burglary, one prior conviction for obtaining money under false pretenses, one prior conviction of grand larceny, and one prior conviction for third-offense driving while intoxicated. The Supreme Court found that the defendant's sentence of life imprisonment was significantly disproportionate to his crime because uttering no account check was a nonviolent crime, his prior felonies were relatively minor, the sentence was the most severe the state could impose on any criminal, and only one other state authorized a life sentence without parole under circumstances similar to the defendant's case. 463 U.S. at 297–300, 103 S.Ct. at 3013–15, 77 L.Ed.2d at 653–55.

In the instant case, Mr. Boso's most recent felony conviction was for night-time burglary. Under W.Va.Code, 61–3–11, any person convicted of burglary "shall be confined in the penitentiary not less than one nor more than fifteen years."

Mr. Boso previously had been convicted of delivery of a controlled substance and breaking and entering, both of which were punishable by confinement in the penitentiary. The felony offense of delivery of a controlled substance, which involved the delivery of 20 grams of marijuana by Mr. Boso on June 19, 1974, is punishable by confinement in the penitentiary for a period of not less than one nor more than five

years. He received a suspended sentence and was placed on probation for two years.

Mr. Boso's second felony offense involved a breaking and entering into a Super X drug store on February 4, 1981. The crime of breaking and entering is punishable by confinement in the penitentiary for a period of not less than one nor more than ten years. For the conviction of breaking and entering, Mr. Boso received an indeterminate sentence of not less than one nor more than fifteen years.

The seriousness of the crimes committed by Mr. Boso must be viewed in terms of their violent or nonviolent nature and also whether they were committed against a person or property. *See State v. Oxier,* 179 W.Va. 431, 369 S.E.2d 866 (1988); *State v. Beck,* 167 W.Va. 830, 286 S.E.2d 234 (1981). We pointed out in Syllabus Point 7, in part, of *Beck* that "[t]he primary analysis of these offenses is to determine if they involve actual or threatened violence to the person since crimes of this nature have traditionally carried the more serious penalties and therefore justify application of the recidivist statute." *See also Wanstreet,* 166 W.Va. at 537, 276 S.E.2d at 214.

Neither delivery of a controlled substance nor breaking and entering is per se a crime of violence. Furthermore, the night-time burglary was committed in an unoccupied dwelling. There is nothing in the record to indicate that any weapons were used in these crimes or that there was a threat of violence to any person.

We conclude, therefore, that Mr. Boso's life recidivist sentence is disproportionate to the severity of the offenses upon which it is based. Thus, we remand this case to the trial court for resentencing under the principles set out in *State ex rel. McMannis v. Mohn,* 163 W.Va. 129, 254 S.E.2d 805 (1979), which permits a resentencing on the third felony.

### III.

Finally, this Court has consistently stated that habeas corpus is not a substitute for an appeal, but "will lie to test a denial of a constitutional right." *Carrico v. Griffith,* 165 W.Va. at 821, 272

**710**

S.E.2d at 240. We outlined this general principle in Syllabus Point 4 of *State ex rel. McMannis v. Mohn, supra:*

"A habeas corpus proceeding is not a substitute for a writ of error in that ordinary trial error not involving constitutional violations will not be reviewed."

*See also Edwards v. Leverette*, 163 W.Va. 571, 258 S.E.2d 436 (1979). The remaining issues raised by Mr. Boso in his petition relate to alleged trial errors occurring on his burglary conviction not involving constitutional dimensions, and, therefore, we do not address those issues.[6]

### IV.

In summary, we affirm the denial of habeas corpus relief insofar as it relates to Mr. Boso's burglary conviction. However, we grant relief as to the recidivist life sentence because we find it violates our constitutional proportionality principle. The case is, therefore, remanded to the circuit court for resentencing in accordance with the principles set out in *State ex rel. McMannis v. Mohn, supra.*

Reversed, in part, and Remanded.

---

**6.** Mr. Boso contends that the trial court erred by: (1) permitting the State to improperly emphasize Opic's confession during opening statements; (2) granting the State's motion for a weakened version of the accomplice instruction; (3) denying the defendant's motion for severance of the three counts of the indictment; (4) granting the State's motion in limine; (5) allow-

ing the State to represent to the jury that Opic was "taking his chances" on being sentenced to imprisonment when he actually received probation; and (6) refusing to strike for cause members of the venire who recognized the defendant during voir dire of the defendant's recidivist trial.