No. 17-0978 – *State of West Virginia v. Travis Norwood*

WORKMAN, Justice, concurring, in part, and dissenting, in part:

FILED
**May 30, 2019**
**released at 3:00 p.m.**
EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

I agree with the majority that a prior conviction can be used to support a recidivist charge, even if the prior sentence has not been fully discharged prior to the third sentence being imposed and that there was sufficient evidence to support the petitioner's conviction for delivery of a controlled substance. I disagree with the majority in its finding that the recidivist life sentence imposed under the circumstances here present did not violate the proportionality clause of article III, section 5 of the West Virginia Constitution. Nor is it consistent with very recent existing law.

In light of the petitioner's express waiver of this issue below, the majority could have resolved the issue based on waiver. But since the majority chose to deal with the substance of the issue, I will also do so. The majority's determination on the merits that the recidivist life sentence imposed upon the petitioner does not violate the proportionality clause is in direct contravention with *State v. Lane*, ___ W. Va. ___, 826 S.E.2d 657 (2019), an opinion issued over a month ago by this Court. This Court must seek to treat all litigants fairly and equally, and as in the *Lane* case, the petitioner's recidivist life sentence is unconstitutional when examined in the backdrop of his prior convictions.

# I. Waiver

The majority, almost in passing, acknowledges that prior to sentencing, after the recidivist action was decided by the jury, "the circuit court inquired of Defendant Norwood and his counsel if there was any argument regarding proportionality to be made. Hearing none, the circuit court found both the delivery of heroin, as well as the prior felony conviction of eluding police, to be crimes of potential violence," and sentenced the petitioner to life in prison. Again, in footnote five of the majority opinion, the majority states: "We would also note that Defendant Norwood waived the Consitutitional challenge to his sentence below. The colloquy during the sentencing phase, coupled with the language in the circuit court's order of October 10, 2017, demonstrate that waiver." Rather than silence from the petitioner and his counsel, as the majority's factual recitation erroneously portrays, or the "waiver" buried in footnote four *after* the majority resolves the proportionality claim on the merits, what actually transpired below is as follows:

> THE COURT: Should we proceed to sentencing at this point or do you want to have time to discuss the issue prepare any – you may have some motions you want to make before we get to that point. I'll be glad to defer sentencing to give you the opportunity to do that.
>
> MR. RODGERS [the petitioner's trial counsel]: Your Honor, I've discussed all that with Mr. Norwood at length last week, and I think he's aware that he would face sentencing today inasmuch as there is no discretion in the statute, and he's prepared to be sentenced.
>
> THE COURT: Well, the defendant does have the opportunity if he wishes to make a proportionality type

2

argument. I would note that the offenses for which the defendant has been found to have been convicted in the Commonwealth of Virginia include one that involves an element of recklessness and danger to the public, which would be akin to the danger presented and the potential violence associated with driving under the influence or similar type of conviction, but if you want to make the argument, Mr. Rodgers, I want to give you every opportunity to present your case and to flesh it out as fully and to make whatever record you want to make.

MR. RODGERS: He's prepared to be sentenced today, Your Honor, *and waive that.*

THE COURT: Well, Mr. Rodgers, do you wish to be heard on the issue of sentencing?

MR. RODGERS: No, Your Honor.

THE COURT: Mr. Norwood, is there anything that you would like to say by way of mitigation of your punishment or otherwise?

THE DEFENDANT: Nothing I can think of, Your Honor.

THE COURT: Anything that you'd like to put on the record that the Supreme Court can see if you choose to file an appeal in this case?

THE DEFENDANT: No, thank you, Your Honor.

(Emphasis added). In its October 10, 2017, sentencing order, based upon the foregoing

exchange at the conclusion of the recidivist proceeding, the circuit court expressly found that

> [t]he Court **FINDS** that the Defendant has freely, knowingly and voluntarily waived any contest [to] the proportionality of the sentence imposed by statute. The Court further **FINDS** that, based upon a complete review of the file, the nature of

3

> the triggering and predicate convictions, and applicable caselaw in this State, the sentence as mandated by statute is not violative of the Constitution.

Both the transcript of the sentencing phase and the circuit court's order evince a clear waiver of the proportionality challenge the petitioner now assigns as error on appeal. We recently stated in *Montgomery v. Ames*, No. 16-0915, 2019 WL 1890242 (W. Va. April 26, 2019), that

> just as an accused may waive his constitutional rights to assistance of counsel and trial by jury, which are designed for the protection of his or her personal rights, an accused may waive the similar personal right of indictment by a grand jury. An accused may waive sundry constitutional rights and privileges, if he or she does so intelligently and voluntarily.

*Id*. at *9 (footnote omitted). Further, this Court repeatedly has found that "[a] criminal defendant can knowingly and intelligently waive his constitutional rights," so long as "such knowing and intelligent waiver is conclusively demonstrated on the record." Syl. Pt. 2, in part, *Call v. McKenzie*, 159 W. Va. 191, 220 S.E.2d 665 (1975); *see* Syl. Pt. 3, *Losh v. McKenzie*, 166 W. Va. 762, 277 S.E.2d 606 (1981) ("A waiver of a constitutional right must be knowing and intelligent, that is a voluntary relinquishment of a known right, and if the waiver is conclusively demonstrated on the record at trial . . . the waiver makes any issue

4

concerning the right waived res judicata in succeeding actions in habeas corpus.").[1]

"When there has been a knowing and intentional relinquishment or abandonment of a known right, there is no error and the inquiry as to the effect of a deviation from the rule of law need not be determined." Syl. Pt. 8, in part, *State v. Miller*, 194 W. Va. 3, 459 S.E.2d 114 (1995). Thus, we have found that when an alleged error, even of a constitutional magnitude, is waived, it "is not subject to consideration on appeal." *State v. Sheppard*, 172 W. Va. 656, 663 n.1, 310 S.E.2d 173, 180 n.1 (1983).

Consequently, in light of the record demonstrating a knowing and intelligent waiver based upon advice from his counsel, the majority was wrong to ignore that express waiver, pretend it did not exist, and resolve the waived issue on the merits. Had the majority simply found the petitioner's challenge to proportionality to have been waived, then the circuit court's imposition of the recidivist life sentence would have been susceptible to affirmation by this Court on appeal. *See* Syl. Pt. 2, *State v. Booth*, 224 W. Va. 307, 685 S.E.2d 701 (2009) ("'Sentences imposed by the trial court, if within statutory limits and if

---

[1]Had there not been an express waiver in this case, then this Court could have properly resolved the merits of the petitioner's proportionality challenge. *See* Syl. Pt. 2, *Louk v. Cormier*, 218 W. Va. 81, 622 S.E.2d 788 (2005) ("A constitutional issue that was not properly preserved at the trial court level may, in the discretion of this Court, be addressed on appeal when the constitutional issue is the controlling issue in the resolution of the case."). In the case at bar, however, it is not a matter of the constitutional issue not being properly preserved.

not based on some [im]permissible factor, are not subject to appellate review.' Syllabus point 4, *State v. Goodnight*, 169 W. Va. 366, 287 S.E.2d 504 (1982)."). Instead, the majority ignores the legal significance of the waiver by determining the merits of the proportionality challenge, resulting in an opinion that will become the oft-cited authority for parties to advance waived arguments on appeal.[2]

## II. Proportionality Challenge to Recidivist Life Sentence

Because the majority deems it appropriate to address the issue of the constitutional proportionality of the recidivist life sentence imposed in this case on the merits, finding that the sentence was "consistent with the precedents of this Court, Defendant Norwood's life sentence does not violate proportionality principles[,]" I would be remiss not to dissent from the majority opinion as that determination is inconsistent on its face with our recent *Lane* decision. *See* ___ W. Va. ___, 826 S.E.2d 657. It is necessary to place the unjustness of the petitioner's life sentence into perspective in light of *Lane*.

---

[2]Despite the waiver of the constitutional proportionality issue, the petitioner may still pursue an ineffective assistance of counsel claim in a habeas corpus proceeding. *See Miller*, 194 W. Va. at 6, 459 S.E.2d at 117, Syl. Pt. 5 ("In the West Virginia courts, claims of ineffective assistance of counsel are to be governed by the two-pronged test established in *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984): (1) Counsel's performance was deficient under an objective standard of reasonableness; and (2) there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceedings would have been different.").

Under facts remarkably similar to the instant case, the majority of this Court, in *Lane*, reversed the circuit court's imposition of a recidivist life sentence. *Id*. at ___, 826 S.E.2d at 658. In *Lane*, as in this case, the petitioner was charged with delivery of a controlled substance as set forth in West Virginia Code § 60A-4-401(a)(2014), which was the triggering felony for recidivist purposes in both cases. The only difference between the charge in *Lane* and the charge in the case at bar is that *Lane* involved the drug Oxycodone and, here, it was heroin. The majority even expressly confirms this difference, stating that in *Lane* the majority declined to impose a recidivist life sentence where the predicate felonies involved the delivery of Oxycodone, but "[i]n this matter, however, due to the nature of heroin itself, heroin trafficking clearly warrants application of the recidivist statute."

Under our statutory law, Oxycodone is a Schedule II drug and heroin is a Schedule I drug, but the Legislature has found both drugs to have a "high potential for abuse[.]"[3] Further, under the express statutory language with which both the defendant in *Lane* and the petitioner in this case were charged, both Schedule I and Schedule II drugs are treated the same. *See* W. Va. Code § 60A-4-401(a) (providing "[e]xcept as authorized by this act, it is unlawful for any person to . . . deliver . . . a controlled substance. Any person who violates this subsection with respect to: (I) A controlled substance classified in

---

[3]*See* W. Va. Code § 60A-2-203 (2014) (setting for Schedule I drug criteria) and W. Va. Code § 60A-2-205(2014) (setting forth Schedule II drug criteria.).

Schedule I or II . . . .").  Thus, statutorily, both drugs are potentially deadly.  Certainly, the majority's discernable rationale, i.e. that heroin carries a more negative public perception plainly does not justify the imposition of a recidivist life sentence.  Further, despite the majority's interjection of "heroin trafficking" into the mix, in both cases, the charge came as a result of a controlled-drug buy from a confidential informant during which law enforcement officers were closely monitoring their respective confidential informants. Thus, the triggering felonies are essentially the same.

With that said, in examining the petitioner's previous felonies in this case, his convictions included: (1) a 2016 conviction in Virginia for distribution or possession with intent to distribute marijuana for which he was sentenced to a two-year term of incarceration with all but sixty days suspended with a probationary release; and (2) a 2008 conviction, also in Virginia, for eluding the police in a vehicle for which he was sentenced to a four-year term of incarceration that was suspended after the petitioner was incarcerated for just four months and he was placed on indefinite probation.  In comparison, the petitioner in *Lane* was previously convicted of unlawful wounding in 1997, which was conceded to be a crime of violence, and conspiracy to commit a felony of transferring stolen property in 2009. *Lane*, ___ W. Va. at ___, 826 S.E.2d at 659.

Under the proportionality clause of the West Virginia Constitution, as set forth in article III, section 5, "[e]xcessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishment inflicted. *Penalties shall be proportioned to the character and degree of the offence*." (Emphasis added). In this case, the petitioner was sentenced to a recidivist life sentence according to the provisions of West Virginia Code § 61-11-18(c) (2014), which expressly provides that if a defendant has "been twice before convicted in the United States of a crime punishable by confinement in a penitentiary, the person shall be sentenced to be confined in the state correctional facility for life." Despite the statute providing that a life sentence "shall" be imposed where a defendant has been convicted of three felonies, any life sentence imposed by the circuit court under the recidivist statute, nonetheless, is subject to scrutiny under the proportionality clause of our Constitution. *See* W. Va. Const. art. III, § 5; U. S. Constitution amend VIII.

To that end, we held in syllabus point four of *Wanstreet v. Bordenkircher*, 166 W. Va. 523, 276 S.E.2d 205 (1981), that "[w]hile our constitutional proportionality standards theoretically can apply to any criminal sentence, they are basically applicable to those sentences where there is either no fixed maximum set by statute or where there is a life recidivist sentence." Significantly, "we have consistently viewed the West Virginia recidivist statute in a restrictive fashion in order to mitigate its harshness." *Id.* at 528, 275 S.E.2d at 209. Accordingly, we further stated in *Wanstreet* that:

9

[w]hen we analyze a life recidivist sentence under proportionality principles, we are in effect dealing with a punishment that must be viewed from two distinct vantage points: first, the nature of the third offense and, second, the nature of the other convictions that support the recidivist sentence. This duality is occasioned by the fact that the punishment for the third felony conviction is an automatic life sentence regardless of the nature of the penalty for the underlying third felony. . . .

We do not believe that the sole emphasis can be placed on the character of the final felony which triggers the life recidivist sentence since a recidivist statute is also designed to enhance the penalty for persons with repeated felony convictions, i.e., the habitual offenders. However, for purposes of proportionality, the third felony is entitled to more scrutiny than the preceding felony convictions since it provides the ultimate nexus to the sentence.

*Id*. at 533-34, 276 S.E.2d at 212 (footnote omitted). We then held shortly after *Wanstreet*:

The appropriateness of a life recidivist sentence under our constitutional proportionality provision found in Article III, Section 5, will be analyzed as follows: We give initial emphasis to the nature of the final offense which triggers the recidivist life sentence, although consideration is also given to the other underlying convictions. *The primary analysis of these offenses is to determine if they involve actual or threatened violence to the person since crimes of this nature have traditionally carried the more serious penalties and therefore justify application of the recidivist statute*.

Syl. Pt. 7, *State v. Beck*, 167 W. Va. 830, 831, 286 S.E.2d 234 (1981) (emphasis added);

*accord Kilmer*, 240 W. Va. at 185, 808 S.E.2d at 867-68, Syl. Pt. 3.

10

The majority's decision unquestionably conflicts with our existing law and undeniably treats two similarly situated individuals disparately. The imposition of a life sentence for the three felonies for which the petitioner stands convicted violates the proportionality clause of the West Virginia Constitution. *See* W. Va. Const. art. III, § 5.

An examination of the petitioner's prior felonies and sentences does not support the imposition of a recidivist life sentence. The petitioner's convictions in Virginia for eluding the police and for possession with intent to deliver marijuana resulted in suspended sentences and probation being imposed. Despite the majority's determination that the conviction for eluding the police "clearly carries with it the risk of violence[,]" there was no evidence of the potential threat of violence and, presumably, the Virginia court would not have suspended his sentence and probated the petitioner if, in fact, it considered this to be a violent crime. *See Lane,* ___ W. Va. at ___, 826 S.E.2d at 658. (reversing recidivist life sentence on facts identical to case at bar); *State ex rel. Boso v. Hedrick*, 182 W. Va. 701, 709, 391 S.E.2d 614, 622 (1990) (reversing recidivist life sentence where the defendant, who had been previously convicted of delivery of a controlled substance, which was twenty grams of marijuana, and breaking and entering, should not have been sentenced to life imprisonment for third felony of night-time burglary); *State v. Deal*, 178 W. Va. 142, 146, 358 S.E.2d 226, 230 (1987) (reversing recidivist life sentence where defendant's triggering offense was possession of a controlled substance, 125.4 grams of marijuana, with intent to deliver and

11

defendant had prior violent felony conviction for unlawful wounding and grand larceny); *see generally Kilmer*, 240 W. Va. at 185, 808 S.E.2d at 868, Syl. Pt. 4 (finding that felony offense of driving while license revoked for driving under influence is not offense that involves actual or threatened violence to person for purposes of invoking recidivist statute).[4]

Because the petitioner has been convicted of a third felony–the delivery of heroin–the majority wants to imprison him for life. Let there be no mistake that while the petitioner's triggering felony carries a sentence of one to fifteen years, it does not carry any mandatory incarceration. Further, under a statute recently enacted by the Legislature during its 2019 Regular Session, Enrolled Committee Substitute for Senate Bill 152, referred to as the "Second Chance Law," which was approved by the Governor and will take effect on June 7, 2019, the triggering offense for the recidivist proceeding against the petitioner would be subject to an expungement. This drug offense neither appears in the list of enumerated offenses that are not susceptible to being expunged nor does it fall within the statutory definition of a "[f]elony crime of violence against the person[.]" W. Va. Code § 61-11-26 (2)(p) (2019). Thus, under this new law,

---

[4]I would be remiss to not point out that the majority's reliance upon *State ex rel. Daye v. McBride*, 222 W. Va. 17, 658 S.E.2d 547 (2007), for the proposition that "[t]his Court has upheld a life sentence under our recidivist statute, when all three felony convictions were for delivery of crack cocaine[]" ignores the fact that there was no constitutional proportionality clause challenge to the life sentence imposed in *Daye*. *See Lane*, ___ W. Va. at ___, 826 S.E.2d at ___.

a person convicted of a nonviolent felony offense[5] or offense arising from the same transaction or series of transactions may, pursuant to the provisions of this section, petition the circuit court in which the conviction or convictions occurred for expungement of the conviction or convictions and the records associated with the conviction or convictions.

*Id.* § 61-11-26(a)(2) (2019) (footnote added). It is absurd and nonsensical for the majority to find that a crime that could be expunged merits imposition of a recidivist life sentence.

Accordingly, based upon the majority's decision to ignore the petitioner's waiver of the proportionality challenge and decide that issue on the merits, the majority erred in finding the imposition of a life sentence was warranted, an abuse of discretion, and contrary to this Court's recent decision in *Lane*.

---

[5]Of course, this Court's determination that all "delivery and use of heroin" crimes "carries with it a potential for actual violence to a person" necessarily undermines this statute, which was to provide individuals with a second chance.

13