# STATE OF WEST VIRGINIA
## SUPREME COURT OF APPEALS

**State of West Virginia,**
**Plaintiff Below, Respondent,**

**vs) No. 19-0829** (Taylor County No. 19-F-55)

**Charles W. Mauller,**
**Respondent Below, Petitioner**

**FILED**

**July 30, 2020**

EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

## MEMORANDUM DECISION

Petitioner Charles W. Mauller, by counsel Jason T. Gain, appeals the August 8, 2019, order of the Circuit Court of Taylor County that sentenced petitioner upon his convictions for third offense domestic battery, battery, and unlawful restraint. Further, due to petitioner's two prior felony domestic battery convictions, the circuit court sentenced petitioner as a recidivist to life imprisonment with the possibility of parole. Respondent, the State of West Virginia, by its counsel Elizabeth Grant, filed a response in support of the circuit court's order.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

Petitioner was indicted on three counts: domestic battery third or subsequent offense in violation of West Virginia Code § 61-2-28(d) (Count 1), malicious assault in violation of West Virginia Code § 61-2-9(a) (Count 2), and kidnapping in violation of West Virginia Code § 61-2-14(a) (Count 3).

Two pretrial motions are relevant to this appeal. The first, filed by the State, sought to admit the following evidence under Rule 404(b) of the West Virginia Rules of Evidence: (1) four uncharged instances of domestic violence allegedly perpetrated by petitioner against the victim to show criminal intent and his modus operandi of exerting control over the victim; and (2) five instances of domestic violence allegedly perpetrated by petitioner against his former girlfriend. The second motion, filed by petitioner, sought a forensic examination to determine whether he was competent to stand trial. Petitioner's counsel proffered that petitioner had been diagnosed with

1

bipolar disorder, intermittent explosive disorder, and a form of schizophrenia. However, petitioner provided no medical records in support of his motion.

At a pretrial hearing, the circuit court denied petitioner's motion for a competency examination because his motion was filed "pretty late in the process," and, based on the court's extensive experience with petitioner over many years and several cases, it found it had "never seen any indication that [petitioner] was mentally incompetent" or "lacked criminal responsibility." The court also addressed the State's Rule 404(b) motion and excluded any evidence regarding petitioner's prior girlfriend. However, the circuit court allowed evidence of petitioner's history of violence with the victim because it would put the relationship in context and allow the jury "to consider the motive, intent[,] and whether malice or ill will existed by [petitioner] toward [the victim]."

Petitioner's two-day trial commenced on June 3, 2019. The victim testified that she had dated petitioner for seven years. She discussed her tumultuous relationship with petitioner and testified to the numerous times she had to escape petitioner's beatings. She also said she had been afraid to file a protective order against petitioner because she believed he would kill her if she did. Regarding petitioner's current charges, the victim testified that petitioner picked her up at her father's house on January 5, 2018, and that she went with him because he "said he wouldn't hit me no more. He couldn't live without me. I loved him." She said petitioner began to hit her that same evening and beat her on and off for the next four days and that he forbade her from leaving his house. The victim also testified that petitioner cut her hair, extinguished a cigarette on her face, and cut her with an ice pick. She said petitioner told her that if she tried to escape, he would make her a "vegetable." The victim escaped when petitioner was "high," and she went into an auto parts store seeking help.

The manager from the auto parts store testified at petitioner's trial. He said that when the victim came into his store, she was visibly upset and shaken. He said her "eyes were almost swollen shut. Her jaw was swollen. And when she pulled off her toboggan her ear was swollen real bad." He said staff from the store called 911.

The doctor who treated the victim testified that the victim suffered injuries to her face, head, and left ear, and that she had a cigarette burn on her face. The doctor also said the victim had "several linear injuries, abrasions, compatible with being made by a sharp object."

The victim's father testified to the many injuries the victim sustained from petitioner's beatings over the years.

At the close of all evidence, the circuit court gave the jury the following limiting instruction regarding the testimony at trial:

> You've heard evidence concerning alleged conducts or acts of [petitioner] which are not charged in the indictment, and for which he is not on trial. You're instructed that such evidence is not entered as proof of the defendant's guilt on the present charges. The evidence has been admitted for a limited purpose only, and it may be considered by you only in deciding whether a given issue or element relevant to the present charge issues have been proven. In this instance the evidence

of [petitioner's] prior conduct may be used to show his malice and intent towards the victim [], and further that [the victim's] fear was grounded in rational thought. It may further be used to provide you the full story of the events and an explanation of the relationship between [petitioner] and [the victim]. You may not use this evidence in consideration of whether the [S]tate has established the charge for which [petitioner] is currently on trial. In addition, such evidence is not relevant to any matters, such as the character of [petitioner], whether [petitioner] is a bad person, or whether [petitioner] had the propensity or the disposition to commit the crimes charged. The evidence may not be considered in that regard since [petitioner's] character is not at issue.

Following deliberations, the jury convicted petitioner on all three counts of the indictment: domestic battery, third or subsequent offense (Count 1); misdemeanor battery, a lesser included offense of malicious assault (Count 2); and unlawful restraint, a lesser included offense of kidnapping (Count 3).

Following trial, the State filed a recidivist action against petitioner pursuant to West Virginia Code § 61-11-18, alleging that he had two prior convictions for felony domestic battery, third or subsequent offense. Petitioner responded with a motion to dismiss the recidivist information and, the same day, entered a conditional admission to the recidivist information. The circuit court found petitioner to be a recidivist and sentenced him to life with mercy for his domestic battery conviction (Count 1), and one year in the regional jail for his unlawful restraint conviction (Count 3), to be served consecutively. The court did not sentence petitioner for the misdemeanor battery conviction (Count 2) because there was no finding by the jury that it was a separate battery from the domestic battery charged in Count 1.

Petitioner now appeals. "The Supreme Court of Appeals reviews sentencing orders, including orders of restitution made in connection with a defendant's sentencing, under a deferential abuse of discretion standard, unless the order violates statutory or constitutional commands." Syl. Pt. 1, *State v. Lucas*, 201 W. Va. 271, 496 S.E.2d 221 (1997). To the extent petitioner's appeal raises questions of law, we apply the following standard of review: "Where the issue on an appeal from the circuit court is clearly a question of law or involving an interpretation of a statute, we apply a *de novo* standard of review." Syl. Pt. 1, *Chrystal R.M. v. Charlie A.L.*, 194 W. Va. 138, 459 S.E.2d 415 (1995).

As noted above, petitioner was sentenced as a recidivist to life in prison under West Virginia Code § 61-11-18(c),[1] which provides, in relevant part, that when a "person shall have been twice before convicted in the United States of a crime punishable by confinement in a penitentiary, the person shall be sentenced to be confined in the state correctional facility for life."

Petitioner's first assignment of error is that the circuit court's imposition of a recidivist life sentence violated his rights under the West Virginia and United States Constitutions. This Court

---

[1] In the 2020 Legislative session, the Legislature modified West Virginia Code § 61-11-18 (1994), such that paragraph (c) has been moved to paragraph (d). However, no changes were made that affect this appeal.

adopted the following guidelines for assessing the constitutional proportionality of a life sentence for recidivism in syllabus point 7, *State v. Beck*, 167 W. Va. 830, 286 S.E.2d 234 (1981):

> The appropriateness of a life recidivist sentence under our constitutional proportionality provision found in Article III, Section 5, will be analyzed as follows: We give initial emphasis to the nature of the final offense which triggers the recidivist life sentence, although consideration is also given to the other underlying convictions. The primary analysis of these offenses is to determine if they involve *actual or threatened violence* to the person since crimes of this nature have traditionally carried the more serious penalties and therefore justify application of the statute.

(Emphasis added). These guidelines were recently modified by syllabus point 12 of *State v. Hoyle*, 242 W. Va. 599, 836 S.E.2d 817 (2019), where we held:

> For purposes of a life recidivist conviction under West Virginia Code § 61-11-18(c), two of the three felony convictions considered must have involved either *(1) actual violence, (2) a threat of violence*, or (3) substantial impact upon the victim such that harm results. If this threshold is not met, a life recidivist conviction is an unconstitutionally disproportionate punishment under Article III, Section 5 of the West Virginia Constitution.

(Emphasis added).

The constitutional standards set forth in *Beck* and *Hoyle* permit the imposition of a life sentence for recidivism under West Virginia Code § 61-11-18(c) upon a showing of prior felony convictions that involve either "actual violence" or "a threat of violence." Petitioner argues that these terms are unconstitutionally vague and violate a defendant's due process rights.

In that regard, petitioner contends that the United States Supreme Court has offered conflicting approaches to assessing whether a prior felony could support a recidivist sentence as a crime of violence, pointing out that the Supreme Court has sometimes applied an approach that certain crimes are violent as a category, while other times it has used an approach that weighs whether the felonious conduct of the defendant was violent or threatened violence. Compare *Taylor v. United States,* 495 U.S. 575, 600 (1990) (adopting a "formal categorical approach" that looks "only to the statutory definitions" of a defendant's prior felony offenses, and *not* "to the particular facts underlying those convictions.") and *Sessions v. Dimaya*, 138 S. Ct. 1204, 1252 (2018) (Thomas, J., dissenting) ("I adhere to my view that a law is not facially vague '[i]f any fool would know that a particular category of conduct would be within the reach of the statute, if there is an unmistakable core that a reasonable person would know is forbidden by the law.'" (Citation omitted)). Petitioner then contends that this Court has also employed conflicting approaches in weighing whether a defendant's prior felony was a crime of violence sufficient to support a recidivist sentence. Petitioner asserts that, to make the determination, the Court has sometimes applied a categorical approach (*see State ex rel. Appleby v. Recht*, 213 W. Va. 503, 583 S.E.2d 800 (2002) (holding third-offense DUI is a violent offense); Syl. Pt. 4, *State v. Kilmer*, 240 W. Va. 185, 808 S.E.2d 867 (2017) ("The felony offense of driving while license revoked for DUI . . . is not an offense that involves actual or threatened violence to the person for purposes of invoking the

recidivist statute, West Virginia Code § 61-11-18(c).")). Petitioner then states that at other times the Court has examined the underlying conduct (*see State ex rel. Boso v. Hedrick*, 182 W. Va. 701, 709, 391 S.E.2d 614, 622 (1990) (Recidivist sentence was improper because the most recent, third offense, night-time burglary, "was committed in an unoccupied dwelling. There is nothing in the record to indicate that any weapons were used in these crimes or that there was a threat of violence to any person.")).

Petitioner's lengthy argument concludes with his assertion that a jury, rather than the circuit court, should have been permitted to hear evidence regarding his prior felony, domestic battery convictions, and thereafter determined all of the facts relevant to his recidivist punishment; namely, whether petitioner's prior convictions involved violence, a threat of violence, or had a substantial impact upon his victims.

Based on the record in this case, we reject petitioner's argument. Here, petitioner's central conviction was for felony, third-or-subsequent-offense domestic battery. Petitioner's recidivist sentence was based on the fact that petitioner had previously been convicted, at least twice before, of felony, third-or-subsequent-offense domestic battery. Petitioner does not contend these prior convictions did not involve violence or threats of violence. Moreover, petitioner's victim testified to numerous prior acts of domestic battery and threatened acts of violence that happened over the course of her seven-year relationship with petitioner. On this record, we mirror Justice Thomas's statement in *Dimaya* that any fool would know that his conduct was within the reach of the recidivist statute, because any reasonable person would know that his repeated acts of domestic violence are forbidden by the law. 138 S. Ct. at 1252. Whether we construe third-offense domestic battery categorically as a crime of actual or threatened violence or examine the individual acts of petitioner, the result in this case would be the same. The record clearly shows the petitioner perpetrated repeated acts of domestic violence upon the victim in this case, and petitioner does not deny the same. Thus, petitioner's sentence is not unconstitutional under syllabus point 12 of *Hoyle*, because *all* of his felony domestic battery convictions involved actual violence, threats of violence, and a substantial impact on his victim. *Hoyle,* 242 W. Va. at __, 836 S.E.2d at 820. Accordingly, on this record, we find no merit in petitioner's first assignment of error.

Petitioner's second assignment of error is that the circuit court erred by refusing to order that petitioner undergo a pretrial criminal competency evaluation. Petitioner argues that a circuit court is required to order a competency examination "[i]f the court of record finds . . . that there is probable cause to believe that the defendant's criminal responsibility or diminished capacity will be a significant factor in his or her defense[.]" W. Va. Code § 27-6A-4(a), in relevant part. At a pretrial hearing, petitioner's counsel proffered that he believed petitioner was taking medication (possibly a lithium compound) and that petitioner had been diagnosed as having an "explosive disorder." Given these proffers, petitioner asserts that the circuit court should have referred him for a psychiatric examination prior to trial.

When a defendant challenges a circuit court's decision regarding a competency examination, we review the decision for an abuse of discretion:

Because a trial court is able to observe the demeanor of the defendant and consequently has a better vantage point than this Court to make determinations regarding mental competency, we will disturb a lower court's ruling denying a

psychiatric examination and related proceedings only where there has been an abuse of discretion.

*State v. Sanders*, 209 W. Va. 367, 379, 549 S.E.2d 40, 52 (2001). This Court has identified five factors a circuit court may consider when deciding whether a competency examination is needed, including:

Evidence of irrational behavior, a history of mental illness or behavioral abnormalities, previous confinement for mental disturbance, demeanor before the trial judge, psychiatric and lay testimony bearing on the issue of competency, and documented proof of mental disturbance are all factors which a trial judge may consider in the proper exercise of his discretion.

Syl. Pt. 5, *State v. Arnold*, 159 W. Va. 158, 219 S.E.2d 922 (1975), *overruled on other grounds by State v. Demastus*, 165 W. Va. 572, 270 S.E.2d 649 (1980).

We find no abuse of discretion by the circuit court. The record shows that beyond petitioner's counsel's minimal proffer, petitioner offered no evidence in support of his motion for a competency examination such as psychiatric or lay testimony regarding petitioner's competency or documentary proof of a mental disturbance. Further, the circuit court saw no evidence of irrational behavior, no evidence of a history of mental illness, and no evidence petitioner had previously been confined or treated for a mental disturbance. The circuit court noted that it "ha[d] dealt with [petitioner] for many, many years, since he was a juvenile" and that in none of those cases did the court perceive any evidence that petitioner had a mental illness. Accordingly, the circuit court concluded "there was never any indication [petitioner] was mentally incompetent or lacked criminal responsibility."

Clearly, the record on appeal fails to support petitioner's claim that he lacked criminal competency or his claim that the circuit court erred in failing to order a competency examination. Because we find no abuse of the circuit court's discretion, we reject petitioner's second assignment of error.

Petitioner's third and final assignment of error regards the presentation of evidence at trial of petitioner's past violence toward the victim. Rule 404(a)(1) of the West Virginia Rules of Evidence prohibits the introduction of evidence of a "person's character or character trait" to "prove that on a particular occasion the person acted in accordance with the character or trait." Petitioner asserts that the circuit court erred in permitting the victim to testify that petitioner committed four prior instances of domestic battery against her. Petitioner asserts that even if he had committed four such prior acts, he claims this evidence did nothing to assist the jury and, instead, prejudiced the jury against him.

We apply a three-part analysis to the circuit court's admission of evidence under Rule 404(b):

The standard of review for a trial court's admission of evidence pursuant to Rule 404(b) involves a three-step analysis. First, we review for clear error the trial court's factual determination that there is sufficient evidence to show the other acts occurred. Second, we review *de novo* whether the trial court correctly found the

6

evidence was admissible for a legitimate purpose. Third, we review for an abuse of discretion the trial court's conclusion that the "other acts" evidence is more probative than prejudicial under Rule 403.

*State v. LaRock*, 196 W. Va. 294, 310-11, 470 S.E.2d 613, 629-30 (1996).

The first step of the *LaRock* analysis requires evidence that the "other acts" occurred. Petitioner does not assert the other acts of domestic violence admitted into evidence by the State at trial did not occur. Thus, we find no error by the circuit court regarding step one.

Petitioner's argument focuses on the second part of the *LaRock* analysis: whether the evidence of other acts of domestic violence was admitted for a legitimate purpose. Petitioner contends that the State used the "other acts" evidence to bolster the conclusion that petitioner was guilty of the current charge of domestic battery due to his prior such acts. However, our review of the record shows that the State sought to admit the evidence to support the second and third counts of the indictment, which charged petitioner with malicious assault and kidnapping. Specifically, the State offered the evidence to support its theory that petitioner's conduct was malicious and intentional, and not careless or negligent. Moreover, regarding the kidnapping charge, the State needed to show the jury why the victim did not simply flee from petitioner when he did not physically restrain her. In *State v. Hanna*, 180 W. Va. 598, 607, 378 S.E.2d 640, 649 (1989), we approved of the admission of other acts of violence against a victim under Rule 404(b) to prove a charge of kidnapping:

> Where the lack of consent is an element of the crime, we have recognized that evidence of a defendant's prior violent behavior or incidents of bodily harm toward the victim or others of which the victim is aware may be admissible to show that [the victim's] actions were not consensual, but were induced by fear.

By informing the jury about petitioner's prior violent conduct and threats, the State sought to show the basis for the victim's fear and that her fear was grounded in rational thought, i.e., that her perception was that petitioner was not joking or making an innocuous comment when he told the victim if she tried to leave, "he would make [her] a vegetable." Accordingly, we find the circuit court did not err in finding that the evidence of petitioner's prior domestic violence was admitted for a legitimate purpose.

Finally, petitioner challenges the third step of the *LaRock* analysis and asserts that the prejudicial effect of the prior acts of domestic violence evidence outweighed its probative effect. As we have often said, circuit courts are required to engage in a balancing analysis and determine that "the probative value of such evidence must outweigh risks that its admission will create substantial danger of unfair prejudice." *State v. McGinnis*, 193 W. Va. 147, 156, 455 S.E.2d 516, 525 (1994). Moreover, "[t]he balancing . . . must affirmatively appear on the record." *Id*.

The circuit court's analysis of the State's evidence does appear in the record, and shows that the court recognized, "[w]ithout question it is prejudicial[.]" However, the circuit court also concluded that the "probative value outweigh[ed] that prejudice" because the evidence allowed the State "to explain to the jury and allow them to consider the motive, intent and whether malice

or ill will existed by [petitioner] toward [the victim] at the time in question of these current alleged criminal actions."

Petitioner's arguments fail to acknowledge that the victim's fear of petitioner was critical to the State's claim petitioner had kidnapped the victim, and the State had no other alternatives available to show that the victim's fear was well founded.

Petitioner also fails to show that the admission of the Rule 404(b) evidence affected his substantial rights and changed the outcome of the trial. The evidence at trial showed that petitioner repeatedly beat the victim over the course of four days, burned her face with a lit cigarette, and struck her with an ice pick. This evidence supports the domestic battery conviction. Similarly, the evidence at trial showed petitioner restrained the victim through both physical force and threats of violence, all of which supported the jury's conclusion that petitioner was guilty of unlawful restraint. Thus, we find no abuse of discretion or other error in the circuit court's admission of evidence against petitioner under Rule 404(b).

For the foregoing reasons, we affirm.

Affirmed.

**ISSUED:** July 30, 2020

**CONCURRED IN BY:**

Chief Justice Tim Armstead
Justice Elizabeth D. Walker
Justice Evan H. Jenkins
Justice John A. Hutchison

**NOT PARTICIPATING:**

Justice Margaret L. Workman

8