IN THE SUPREME COURT OF APPEALS OF WEST VIRGINIA

September 2019 Term

_____

No. 18-0141

_____

FILED

**November 22, 2019**

**released at 3:00 p.m.**
EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

STATE OF WEST VIRGINIA,
Plaintiff Below, Respondent

v.

JOHN HENRY HOYLE,
Defendant Below, Petitioner

_____

Appeal from the Circuit Court of Randolph County
The Honorable David H. Wilmoth
Case No. 14-F-99

AFFIRMED IN PART AND REVERSED IN PART
_____

Submitted: October 2, 2019
Filed: November 22, 2019

Jeremy B. Cooper, Esq.
Blackwater Law PLLC
Kingwood, West Virginia
and
James E. Hawkins, Jr., Esq.
Buckhannon, West Virginia
Counsel for Petitioner

Patrick Morrisey, Esq.
Attorney General
Holly M. Flanigan, Esq.
Assistant Attorney General
Charleston, West Virginia
Counsel for Respondent

CHIEF JUSTICE WALKER delivered the Opinion of the Court.

JUSTICE ARMSTEAD and JUSTICE JENKINS concur in part and dissent in part and reserve the right to file separate opinions.

SYLLABUS BY THE COURT

1.      "Where the issue on an appeal from the circuit court is clearly a question of law or involving an interpretation of a statute, we apply a *de novo* standard of review." Syllabus Point 1, *Chrystal R.M. v. Charlie A.L.*, 194 W. Va. 138, 459 S.E.2d 415 (1995).

2.      "The function of an appellate court when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, is sufficient to convince a reasonable person of the defendant's guilt beyond a reasonable doubt. Thus, the relevant inquiry is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proved beyond a reasonable doubt." Syllabus Point 1, *State v. Guthrie*, 194 W. Va. 657, 461 S.E.2d 163 (1995).

3.      "A criminal defendant challenging the sufficiency of the evidence to support a conviction takes on a heavy burden. An appellate court must review all the evidence, whether direct or circumstantial, in the light most favorable to the prosecution and must credit all inferences and credibility assessments that the jury might have drawn in favor of the prosecution. The evidence need not be inconsistent with every conclusion save that of guilt so long as the jury can find guilt beyond a reasonable doubt. Credibility determinations are for a jury and not an appellate court. Finally, a jury verdict should be set aside only when the record contains no evidence, regardless of how it is weighed, from

i

which the jury could find guilt beyond a reasonable doubt. To the extent that our prior cases are inconsistent, they are expressly overruled." Syllabus Point 3, *State v. Guthrie*, 194 W. Va. 657, 461 S.E.2d 163 (1995).

4. "'In considering the constitutionality of a legislative enactment, courts must exercise due restraint, in recognition of the principle of the separation of powers in government among the judicial, legislative and executive branches. Every reasonable construction must be resorted to by the courts in order to sustain constitutionality, and any reasonable doubt must be resolved in favor of the constitutionality of the legislative enactment in question. Courts are not concerned with questions relating to legislative policy. The general powers of the legislature, within constitutional limits, are almost plenary. In considering the constitutionality of an act of the legislature, the negation of legislative power must appear beyond a reasonable doubt.' Syllabus Point 1, *State ex rel. Appalachian Power Co. v. Gainer*, 149 W.Va. 740, 143 S.E.2d 351 (1965)." Syllabus Point 1, *MacDonald v. City Hosp., Inc.*, 227 W. Va. 707, 715 S.E.2d 405 (2011).

5. "As a general rule, the refusal to give a requested jury instruction is reviewed for an abuse of discretion. By contrast, the question of whether a jury was properly instructed is a question of law, and the review is *de novo*." Syllabus Point 1, *State v. Hinkle*, 200 W. Va. 280, 489 S.E.2d 257 (1996).

6. "A variance in the pleading and the proof with regard to the time of the commission of a crime does not constitute prejudicial error where time is not of the

essence of the crime charged." Syllabus Point 4, *State v. Chaffin*, 156 W. Va. 264, 192 S.E.2d 728 (1972).

7. "The variance between the indictment and the proof is considered material where the variance misleads the defendant in presenting his defense to the charge and exposes him to the danger of being put in jeopardy again for the same offense." Syllabus Point 7, *State v. Fairchild*, 171 W. Va. 137, 298 S.E.2d 110 (1982).

8. "The Supreme Court of Appeals reviews sentencing orders, including orders of restitution made in connection with a defendant's sentencing, under a deferential abuse of discretion standard, unless the order violates statutory or constitutional commands." Syllabus Point 1, *State v. Lucas*, 201 W. Va. 271, 496 S.E.2d 221 (1997).

9. "Sentences imposed by the trial court, if within statutory limits and if not based on some [im]permissible factor, are not subject to appellate review." Syllabus Point 4, *State v. Goodnight*, 169 W. Va. 366, 287 S.E.2d 504 (1982).

10. "While our constitutional proportionality standards theoretically can apply to any criminal sentence, they are basically applicable to those sentences where there is either no fixed maximum set by statute or where there is a life recidivist sentence." Syllabus Point 4, *Wanstreet v. Bordenkircher*, 166 W. Va. 523, 276 S.E.2d 205 (1981).

11. "The appropriateness of a life recidivist sentence under our constitutional proportionality provision found in Article III, Section 5, will be analyzed as

follows: We give initial emphasis to the nature of the final offense which triggers the recidivist life sentence, although consideration is also given to the other underlying convictions. The primary analysis of these offenses is to determine if they involve actual or threatened violence to the person since crimes of this nature have traditionally carried the more serious penalties and therefore justify application of the statute." Syllabus Point 7, *State v. Beck*, 167 W. Va. 830, 286 S.E.2d 234 (1981).

12.    For purposes of a life recidivist conviction under West Virginia Code § 61-11-18(c), two of the three felony convictions considered must have involved either (1) actual violence, (2) a threat of violence, or (3) substantial impact upon the victim such that harm results. If this threshold is not met, a life recidivist conviction is an unconstitutionally disproportionate punishment under Article III, Section 5 of the West Virginia Constitution.

WALKER, Chief Justice:

When John Henry Hoyle was convicted of second offense failure to register as a sex offender in 2015, he was sentenced to ten to twenty-five years in prison for that offense and, because of his prior felony convictions, he received a recidivist life sentence under West Virginia Code § 61-11-18(c). On appeal, Mr. Hoyle challenges his conviction under the West Virginia Sex Offender Registration Act (Act)[1] on the grounds that the State failed to prove that he violated the statutory registration requirements and that the trial court incorrectly instructed the jury that time was not of the essence of the alleged offense. He also claims that his ten- to twenty-five-year sentence for second offense failure to register and his recidivist life sentence are unconstitutionally disproportionate. While we affirm the circuit court's denial of Mr. Hoyle's motions for acquittal based on the sufficiency of the evidence and the contested jury instruction and his challenge to the ten- to twenty-five-year sentence, we reverse the circuit court's imposition of a recidivist life sentence.

## I. FACTUAL AND PROCEDURAL BACKGROUND

In 1987, Mr. Hoyle was charged with two felonies arising from the same transaction: (1) Sexual Assault in the Second Degree in Barbour County, West Virginia,[2]

---

[1] W. Va. Code §§ 15-12-1 to -10.

[2] Circuit Court Case No.: 87-F-29.

1

and (2) kidnapping in Upshur County, West Virginia.[3]  Eventually, Mr. Hoyle pleaded guilty to both charges in a single plea agreement.  He was sentenced to incarceration for ten to twenty years for sexual assault and thirty years for kidnapping.  These sentences were ordered to run concurrently.  After serving fifteen and one-half years, Mr. Hoyle was released in 2002.  As a result of the sexual assault conviction, Mr. Hoyle was required to register as a sexual offender for life.[4]

In 2008, Mr. Hoyle pleaded guilty in the Circuit Court of Randolph County to first offense failure to register as a sexual offender under West Virginia Code § 15-12-8(c).  The circuit court sentenced Mr. Hoyle to one to five years' incarceration.[5]  This time, upon his release, Mr. Hoyle properly registered as a sex offender.  Importantly, Mr. Hoyle listed only one telephone number in the registry, a cell phone registered as (304) 6**-5***.

For a time, Mr. Hoyle fulfilled his registry requirements and submitted to annual reviews.  But on October 27, 2014, Mr. Hoyle was indicted by a Randolph County grand jury for two counts of second offense failure to register as a sex offender or provide

---

[3] Circuit Court Case No.: 87-F-39-A.

[4] We note that the West Virginia Sex Offender Registration Act, W. Va. Code §§ 15-12-1 through -10, was not enacted until 1993 and therefore did not yet exist at the time of Mr. Hoyle's conviction for second degree sexual assault in 1988.  But, the statute states unequivocally that its provisions apply retroactively to qualifying offenders.  W. Va. Code § 15-12-2(a).

[5] Circuit Court Case No.: 08-F-11.

2

notice of registration changes under West Virginia Code § 15-12-8(c).  The indictment

charged that Mr. Hoyle

> on or about September 23, 2014, [. . .] did unlawfully and feloniously and knowingly refuse to provide accurate information when so required by the terms of this article, or did knowingly fail to register, or did knowingly fail to provide a change in required information, as a person required to register for life pursuant to this article[.]

At the trial for these charges on September 16, 2015, the testimony of State Police Deputy

David VanMeter and State Police Trooper James Cornelius established the following facts.

On July 22, 2014, Deputy VanMeter attempted to contact Mr. Hoyle by

calling his phone number as listed in the sex offender registry database, but received an

automated voice message informing him that the phone number was no longer in service.[6]

Deputy VanMeter then visited Mr. Hoyle's home to attempt contact, but Mr. Hoyle was

not there.  Later in the day, a neighbor informed Mr. Hoyle that the State Police had been

at his home, so Mr. Hoyle visited the State Police detachment in Elkins, West Virginia, to

follow up.  After Deputy VanMeter inquired about the out-of-service phone, Mr. Hoyle

stated that he had not used that phone for months[7] and that, instead, he used his wife's

---

[6] We note that at trial on September 16, 2015, Mr. Hoyle's counsel produced this phone during opening statements and caused the phone to ring.  We also note, however, that this is not necessarily indicative of whether the phone was or was not in service in July 2014.

[7] We note that Mr. Hoyle's counsel argued both at trial and in briefing before the circuit court and here, on appeal, that the cell phone was lost in a packed box during a move, but that Mr. Hoyle still physically possessed the phone.

3

phone. Mr. Hoyle gave his wife's phone number to Deputy VanMeter, and when Deputy VanMeter later called that number, Mr. Hoyle answered. Deputy VanMeter did not investigate the discrepancies in Mr. Hoyle's registry because he lacked jurisdiction to do so. However, after completing an unrelated investigation, Deputy VanMeter sent a letter to Trooper Cornelius on September 22, 2014, stating that Mr. Hoyle's registry information appeared to be incorrect.

Trooper Cornelius, unlike Deputy VanMeter, had authority to investigate sex offender registry matters. He testified that, after receiving Deputy VanMeter's letter, he opened an investigation into whether Mr. Hoyle had, in fact, failed to update his sex offender registry information. Trooper Cornelius testified that this investigation uncovered that Mr. Hoyle had failed to update his registry information because he neither removed the out-of-service phone number nor added the phone number that he told Deputy VanMeter he was currently using. As a result of Trooper Cornelius's investigation, a grand jury indicted Mr. Hoyle on two counts of failing to update his sex offender registry information for (1) failing to remove a phone number that was no longer in service, and (2) failing to register a phone number (his wife's) that he had used.

After the presentation of evidence at trial, Mr. Hoyle objected to the inclusion of one of the proposed jury instructions related to a variance between the date on which the indictment alleged the crime occurred and the evidence presented at trial. The circuit court determined the instruction was proper and delivered it over Mr. Hoyle's objection. The jury deliberated briefly and returned a guilty verdict on both charges.

4

Before sentencing, the State filed a recidivist information noting its intention to pursue a recidivist life sentence under West Virginia Code § 61-11-18(c) because the 2015 failure-to-update conviction was Mr. Hoyle's third felony conviction. In response to this filing, Mr. Hoyle filed motions in the circuit courts of Barbour, Upshur, and Randolph Counties to retract his prior guilty pleas. With regard to the 1988 convictions, Mr. Hoyle argued that he would not have pled guilty had the Act been enacted at the time. With regard to the 2008 conviction, he argued that, because the Act did not exist for purposes of his prior convictions, he should not have been required to register at all, thus rendering his 2008 conviction void. Mr. Hoyle's motions to retract the 1988 and 2008 guilty pleas were denied, so the State pursued the recidivist sentence in addition to the second offense failure-to-update sentence.

On May 22, 2017, the Circuit Court of Randolph County sentenced Mr. Hoyle to the statutory term of ten to twenty-five years for second offense failure to register. The circuit court also determined that Mr. Hoyle had been convicted of the following three felonies for purposes of the recidivism statute: (1) kidnapping and sexual assault in the second degree, (2) first offense failure to register, and (3) second offense failure to register. Having made that determination, the circuit court sentenced Mr. Hoyle to incarceration for life under the recidivist statute,[8] with that sentence to run consecutive to the ten to twenty-

---

[8] W. Va. Code § 61-11-18(c).

5

five years for failure to update.  It is from these convictions that Mr. Hoyle appeals to this Court.

## II.  STANDARD OF REVIEW

Because Mr. Hoyle alleges multiple errors to which we apply different standards of review, we set out the particular standard of review of each issue, or group of similar issues, in connection with our discussion of them.

## III.  DISCUSSION

Mr. Hoyle raises several alleged errors on appeal.  First, as to his conviction for second offense failure to update, he contends that the trial court erred in denying his motions for acquittal because: (1) there is an ambiguity in the phrase "has or uses" in West Virginia Code § 15-12-2(d)(9); and (2) even if there is no ambiguity, the State failed to meet its burden of proof with regard to his alleged violations.  Second, he asserts that the trial court erred in instructing the jury that time was not of the essence with regard to a variance in the date alleged in his criminal indictment and the evidence presented at trial. Third, he asserts that his ten- to twenty-five-year sentence under West Virginia Code § 15-12-8(c) is unconstitutionally disproportionate.  Finally, he asserts that his life sentence under the recidivist statute, West Virginia Code § 61-11-18(c), is unconstitutionally disproportionate.  We address each of these arguments in turn.

### A.  *Denial of the Motions for Acquittal*

Mr. Hoyle alleges that the trial court erred in denying his motions for acquittal based on statutory ambiguity and, in the alternative, insufficiency of the evidence.

6

We have held that "[w]here the issue on an appeal from the circuit court is clearly a question of law or involving an interpretation of a statute, we apply a *de novo* standard of review."[9] This Court also applies a *de novo* standard of review to the denial of a motion for judgment of acquittal based on sufficiency of the evidence.[10] With regard to sufficiency of the evidence challenges, we have explained that

> [t]he function of an appellate court when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, is sufficient to convince a reasonable person of the defendant's guilt beyond a reasonable doubt. Thus, the relevant inquiry is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proved beyond a reasonable doubt.[11]

And noting the heavy burden that applies to such challenges, we have held that

> [a] criminal defendant challenging the sufficiency of the evidence to support a conviction takes on a heavy burden. An appellate court must review all the evidence, whether direct or circumstantial, in the light most favorable to the prosecution and must credit all inferences and credibility assessments that the jury might have drawn in favor of the prosecution. The evidence need not be inconsistent with every conclusion save that of guilt so long as the jury can find guilt beyond a reasonable doubt. Credibility determinations are for a jury and not an appellate court. Finally, a jury verdict should be set aside only when the record contains no evidence, regardless of

---

[9] Syl. Pt. 1, *Chrystal R.M. v. Charlie A.L.*, 194 W. Va. 138, 459 S.E.2d 415 (1995).

[10] *State v. LaRock*, 196 W. Va. 294, 304, 470 S.E.2d 613, 623 (1996).

[11] Syl. Pt. 1, *State v. Guthrie*, 194 W. Va. 657, 461 S.E.2d 163 (1995).

how it is weighed, from which the jury could find guilt beyond a reasonable doubt.[12]

We begin with Mr. Hoyle's contention that there is ambiguity in the phrase "has or uses" in West Virginia Code § 15-12-2(d)(9). That statutory provision states:

> (d) A person required to register under the provisions of this article shall register in person at the West Virginia State Police detachment responsible for covering the county of his or her residence, and in doing so, provide or cooperate in providing, at a minimum, the following when registering: . . .
>
> (9) Information related to any telephone or electronic paging device numbers that the registrant *has or uses*, including, but not limited to, residential, work, and mobile telephone numbers.[13]

According to Mr. Hoyle, the phrase "has or uses" is ambiguous because those words can have varying interpretations and are too broad for use in a statute carrying criminal penalties. He asserts that the term "has" implies physical possession and that the term "uses" implies ongoing use. He further contends by way of multiple hypotheticals[14]

---

[12] *Id.* at Syl. Pt. 3.

[13] W. Va. Code § 15-12-2(d)(9) (emphasis added).

[14] Mr. Hoyle's hypotheticals include whether a registrant who borrows a bystander's phone to call a cab must register that number, whether a landline in one's house that one never uses must be registered, and whether a phone which has been disconnected for nonpayment, but which is immediately reconnected, must be both removed and relisted. We do not decide hypotheticals, as to do so would be to issue advisory opinions. *See, e.g.*, Syl. Pt. 2, *Harshbarger v. Gainer*, 184 W. Va. 656, 403 S.E.2d 399 (1991) ("'Courts are not constituted for the purpose of making advisory decrees or resolving academic disputes. The pleadings and evidence must present a claim of legal right asserted by one party and denied by the other before jurisdiction of a suit may be taken.' *Mainella v. Board of*

8

that if we were to interpret the statute to include single uses of a phone, the statute would require registrants to report vast amounts of information.

When reviewing a vagueness challenge, we are mindful of our previous holding that

> [i]n considering the constitutionality of a legislative enactment, courts must exercise due restraint, in recognition of the principle of the separation of powers in government among the judicial, legislative and executive branches. Every reasonable construction must be resorted to by the courts in order to sustain constitutionality, and any reasonable doubt must be resolved in favor of the constitutionality of the legislative enactment in question. Courts are not concerned with questions relating to legislative policy. The general powers of the legislature, within constitutional limits, are almost plenary. In considering the constitutionality of an act of the legislature, the negation of legislative power must appear beyond reasonable doubt.[15]

This Court recently considered a vagueness challenge to a different provision of the same statute. In *State v. Nolte*,[16] a petitioner required to register as a sex offender under the Act argued that the term "internet accounts" in West Virginia Code § 15-12-2(d)(8) was unconstitutionally vague because the term was too broad to put a registrant on notice of the information they were required to provide to the State Police. That petitioner

---

*Trustees of Policemen's Pension or Relief Fund of City of Fairmont,* 126 W. Va. 183, 185–86, 27 S.E.2d 486, 487–88 (1943).").

[15] Syl. Pt. 1, *MacDonald v. City Hosp., Inc.*, 227 W. Va. 707, 715 S.E.2d 405 (2011) (citing Syl. Pt. 1, *State ex rel. Appalachian Power Co. v. Gainer*, 149 W. Va. 740, 143 S.E.2d 351 (1965)).

[16] No. 13-0774, 2014 WL 2404323 (May 30, 2014).

was charged with failing to supply information related to his social media accounts, including accounts on Facebook, MySpace, and an Amy Grant fan club website called "Friends of Amy." In finding that the statute was not ambiguous, we noted that "[t]his Court recently explained, 'vagueness challenges seek to vindicate two principles of due process: fair notice by defining prohibited conduct so that such behavior can be avoided, and adequate standards to prevent arbitrary and discriminatory law enforcement.'"[17] We also explained that

> the [Act] is meant to allow the public and law enforcement to monitor the whereabouts of sex offenders, and while the statute is broad in scope, it is at the same time rather specific. The Legislature chose to use the terms "internet accounts," "screen names," ["]user names," and "aliases" to encompass all online activity. Even if this encompasses many different names and/or accounts, the circuit court correctly noted that "simply because a Defendant may be required to report a vast amount of information to the West Virginia State Police with respect to his internet accounts does not make the statute at issue void for vagueness." The Legislature has recognized the risk of sex offenders being online and has chosen to monitor them.[18]

Applying the same analysis to this case, we conclude that West Virginia Code § 15-12-2(d)(9) is not unconstitutionally vague. The purpose of the Act is to enable law enforcement to monitor sex offenders. The Act requires registrants to list any phone number they have or use to further that goal by ensuring that law enforcement officers have

---

[17] *Id.* at *3 (citing *State v. James*, 227 W. Va. 407, 419, 710 S.E.2d 98, 110 (2011)).

[18] *Id.*

registrants' accurate and complete contact information. The Act plainly requires registrants to list *any* numbers related to *any* telephone device to which they have access or which they use. This is a broad requirement, but it is not ambiguous. The statute lists examples of the types of phone numbers registrants must provide, including residential, work, and mobile phone numbers. But, the statute is clear that its list is not exhaustive. And, just as we noted in *Nolte*, the possibility that a registrant may have to supply large amounts of information does not render the statute void for vagueness.

We also find no merit in Mr. Hoyle's alternative contention—that the State failed to meet its burden of proof that he violated West Virginia Code § 15-12-2(d)(9). Mr. Hoyle argues that he "had" the out-of-service phone because it was still physically in his possession. But the Act is meant to allow the public and law enforcement to monitor the whereabouts of sex offenders. So, while a registrant may physically possess a listed phone, that phone no longer serves the purpose of the Act if it is out of service, that is, if it is no longer a means by which law enforcement may monitor the registrant. Bearing in mind the standard for our review of sufficiency of the evidence claims, requiring us to construe the evidence presented at trial in the light most favorable to the prosecution, it is clear that the State met its burden in showing that Mr. Hoyle no longer "had" his out-of-service phone number for purposes of West Virginia Code § 15-12-2(d)(9) because he could not be contacted by that phone.

This is equally true of the State's burden with regard to Mr. Hoyle's use of his wife's cell phone. Mr. Hoyle openly admitted to his use of the phone and later used it

11

in connection with a law enforcement officer's attempt to contact him. As such, the State's burden is satisfied and we find no insufficiency below. Therefore, we affirm the circuit court's denial of Mr. Hoyle's motions for acquittal and the sufficiency of the evidence for the second offense failure to update jury conviction.

## B.   *Jury Instruction*

Mr. Hoyle next contends that the trial court erred by improperly instructing the jury that time was not of the essence with regard to the crime of second offense failure to register or update. Concerning jury instructions, this Court has consistently held that "the question of whether a jury was properly instructed is a question of law, and the review is *de novo*."[19] We also note that

> [w]e consider all the jury heard and, from the standpoint of the jury, decide not whether the charge was faultless in every particular but whether the jury was misled in any way and whether it had an understanding of the issues and its duty to determine those issues. [. . .] We will reverse a conviction only if the error was prejudicial when viewed in light of the entire record.[20]

Over Mr. Hoyle's objection, the trial court delivered the following jury instruction: "The [c]ourt instructs the jury that no indictment or other accusation shall be deemed invalid for imperfectly stating the date at which the offense was committed when time is not of the essence of the offense."

---

[19] Syl. Pt. 1, in part, *State v. Hinkle*, 200 W. Va. 280, 489 S.E.2d 257 (1996).

[20] *Id.* at 285; 489 S.E.2d at 262.

12

According to Mr. Hoyle, time was of the essence because time is also an *element* of second offense failure to update. Under West Virginia Code § 15-12-3, the State must show that the registrant failed to make the required update within ten business days of the time the information changed. As such, he contends that the State was required to prove that he had violated the statute within ten days of the date charged in the indictment. He further argues that the jury instruction refers to a separate issue, namely a variance between the date alleged in the indictment and the proof presented at trial. Under this second point, he asserts that the indictment charged him with violating the registry statute on September 23, 2014, but the State presented evidence from July 2014 which prejudiced him in that it misled him in preparing his defense.[21] The State counters that the jury instruction is not incorrect as a matter of law and that Mr. Hoyle was not prejudiced by the variance because proof presented at trial showed that Mr. Hoyle was in state of continuous violation from July 2014 through his incarceration. We agree with the State.

The language in the jury instruction comes substantially from West Virginia Code § 62-2-10, but we have more succinctly reproduced its language in Syllabus Point 4 of *State v. Chaffin*.[22] In *Chaffin*, we held, "[a] variance in the pleading and the proof with regard to the time of the commission of a crime does not constitute prejudicial error where

_____

[21] We note here that Mr. Hoyle apparently intended to rely on the fact that, because he was incarcerated on September 23, 2014, his obligation to update his registry was stayed under West Virginia Code § 15-12-4(a).

[22] 156 W. Va. 264, 192 S.E.2d 728 (1972).

13

time is not of the essence of the crime charged."[23]  Under Mr. Hoyle's reasoning, because

time is an element of his charged offense, it must also be of the essence of that offense.

We disagree.  Undeniably, it is reversible error for a court to omit an element of a crime,[24]

but that has not happened here.  The trial court instructed the jury not once, but twice, on

the ten-day time frame element, embodied in West Virginia Code § 15-12-3, and its relation

to second offense failure to update, as enumerated in West Virginia Code § 15-12-8(c).

We previously have explained on several occasions when time is of the

essence in criminal matters.  Overwhelmingly, our case law interprets "time is of the

essence" to mean that a defect in the time or date stated in the indictment complicates or

inhibits prosecution of the crime.  For example, in *Chaffin*, we noted that time was of the

essence when it was necessary to determine whether the applicable statute of limitations

had run, thereby prohibiting prosecution of the crime charged.[25]  In *State v. Bermawitz*, we

explained that time was of the essence when multiple conflicting laws had been in effect

over a short period of time because it was necessary to determine which law had been in

---

[23] *Id.* at Syl. Pt. 4.

[24] *See* Syllabus, *State v. Jeffers*, 162 W. Va. 532, 251 S.E.2d 227 (1979) ("Where a trial court gives, over objection, an instruction which incompletely states the law, and the defect is not corrected by a later instruction, the giving of such incomplete instruction constitutes reversible error where the omission involves an element of the crime.").

[25] *Chaffin*, 156 W. Va. at 268, 192 S.E.2d at 731 ("Proof as to time is not material where no statute of limitations is involved.")(citing *State v. Trippe*, 24 S.E.2d 340 (N.C. 1943).  *Accord State v. Bruce*, 26 W. Va. 153 (1885) (interpreting the predecessor to W. Va. Code § 62-2-10 to allow omission of a date in an indictment when it appears on the face of the indictment that the statute of limitations has not run).

14

effect on the precise date of the crime to effectively prosecute it.[26]  In *State v. Runyon*, we invalidated an indictment where the date of the crime was so far in the future that it had not yet come to pass.[27]  None of these concerns are present here.  There are no statute of limitations concerns here, nor were there conflicting laws in place at any time between July and September of 2014.  And, there can be no assertion that the indictment charged a future crime because the October 2014 indictment charged Mr. Hoyle with a crime committed in September 2014.

Turning to Mr. Hoyle's contention that the jury instruction actually concerns a variance, we have explained that "[t]he variance between the indictment and the proof is considered material where the variance misleads the defendant in presenting his defense to the charge and exposes him to the danger of being put in jeopardy again for the same offense."[28]  Despite the variance between the date in the indictment and the proof presented at trial here, there is little doubt that the indictment put Mr. Hoyle on notice of the offenses with which he was charged, including the bases for which the two charges were brought.

Mr. Hoyle was not prejudiced by any alleged insufficiency in the indictment because the charges were detailed in every respect with the exception of the precise date. We can determine from the record that Mr. Hoyle sought to rely upon his incarceration on

---

[26] 98 W. Va. 637, 127 S.E. 494 (1925).

[27] 100 W. Va. 647, 131 S.E. 466 (1926).

[28] Syl. Pt. 7, *State v. Fairchild*, 171 W. Va. 137, 298 S.E.2d 110 (1982).

September 23, 2014, the date alleged in the indictment, to defend against the charges. And we do not question that, under West Virginia Code § 15-12-4(a), a registrant's duty to update is stayed while he or she is incarcerated. But, even if the violation started in July 2014, it had not been corrected by September of that year, including dates prior to his incarceration, so Mr. Hoyle was continuously violating the statute by failing to update his registry information within ten business days of the requisite changes occurring. And, the indictment charges that the crime occurred "*on or about* September 23, 2014[.]"[29] That phrase permits the inference that the crime occurred in a general time frame, not on the specific date of Mr. Hoyle's incarceration. So, even though he was under no obligation to update his registry while incarcerated, he was obligated to do so prior to that incarceration and did not do so.

For these reasons, we conclude that the trial court did not err in delivering the jury instruction. The instruction is taken nearly verbatim from our statutory and case law, so it is not erroneous as a matter of law. Time was not of the essence in this case because, based on our precedent, there was no defect in the indictment which would have prohibited or complicated the prosecution of Mr. Hoyle's crime. Undoubtedly, time is an element of the offense of failing to update one's sex offender registry, but that does not necessarily mean that time is also of the essence. Because we find that the trial court properly instructed the jury as to all elements of the crimes charged, including time, and

---

[29] Emphasis added.

16

because we find that nothing with regard to the element of time would have complicated or inhibited the prosecution of this crime, we find that time was not of the essence. And, we find that the variance between the date in the indictment and the proof presented at trial was not material here because no prejudice resulted from that variance. The indictment provided Mr. Hoyle with detailed notice of the charges brought against him such that he could have mounted effective defenses to those charges. For these reasons, we affirm the circuit court's instruction to the jury on this point.

## C.    *The Sentence for Second Offense Failure to Update*

Mr. Hoyle next alleges that the ten- to twenty-five-year sentence imposed by the trial court under West Virginia Code § 15-12-8(c) for his second offense of failure to update is unconstitutionally disproportionate under Article III, Section 5 of the West Virginia Constitution and under the Eighth Amendment to the United States Constitution. We review a sentencing order "under a deferential abuse of discretion standard, unless the order violates statutory or constitutional commands." [30]   As we have explained, "[s]entences imposed by the trial court, if within statutory limits and if not based on some [im]permissible factor, are not subject to appellate review."[31]

We have previously held that "[while] our constitutional proportionality standards theoretically can apply to any criminal sentence, they are basically applicable to

---

[30] Syl. Pt. 1, in part, *State v. Lucas*, 201 W. Va. 271, 496 S.E.2d 221 (1997).

[31] Syl. Pt. 4, *State v. Goodnight*, 169 W. Va. 366, 287 S.E.2d 504 (1982).

17

those sentences where there is either no fixed maximum set by statute or where there is a life recidivist sentence."[32] West Virginia Code § 15-12-8(c) explicitly states that "[a]ny person convicted of a second or subsequent offense under this subsection is guilty of a felony and, upon conviction thereof, shall be imprisoned in a state correctional facility for not less than ten nor more than twenty-five years." This statutory sentence is precisely what the trial court imposed on Mr. Hoyle and so, under our prior cases, the sentence is well-insulated from Mr. Hoyle's proportionality attack.

We consider Mr. Hoyle's arguments, nonetheless. He contends that his sentence for second offense of failure to update is disproportionate under both the objective and subjective prongs of the proportionality test enumerated by this Court in *State v. Cooper*.[33] We address each prong in turn.

The first prong of *Cooper* asks "whether the sentence for the particular crime shocks the conscience of the court and society. If a sentence is so offensive that it cannot pass a societal and judicial sense of justice, the inquiry need not proceed further."[34] Mr. Hoyle argues that his sentence does so shock the conscience because he is serving ten to twenty-five years in prison for violation of a regulatory, rather than penal, statute. We do not agree.

---

[32] Syl. Pt. 4, *Wanstreet v. Bordenkircher*, 166 W. Va. 523, 276 S.E.2d 205 (1981).

[33] 172 W.Va. 266, 272, 304 S.E.2d 851, 857 (1983).

[34] *Id.*

The West Virginia Legislature has crafted this significant punishment in response to "a compelling and necessary public interest that the public have information concerning persons convicted of sexual offenses in order to allow members of the public to adequately protect themselves and their children from these persons."[35] Both this Court and the Supreme Court of the United States have recognized the importance of protecting the public from sexual offenders, which necessitates the need for harsh deterrent punishments.[36] Finally, because, as noted above, we afford deference under *Goodnight* to the statutory sentences imposed by the Legislature, we cannot find that this sentence is so outrageous as to shock the conscience. As such, we must move on to the second prong of the *Cooper* test.

The second prong requires us to examine the following: (1) the nature of the offense; (2) the legislative purpose behind the punishment; (3) a comparison of the punishment with what would be inflicted in other jurisdictions; and (4) a comparison with

---

[35] W. Va. Code § 15-12-1a(b).

[36] *See, e.g.*, *McKune v. Lile*, 536 U.S. 24, 32–33 (2002) ("When convicted sex offenders reenter society, they are much more likely than any other type of offender to be rearrested for a new rape or sexual assault." (citing U.S. Dept. of Justice, Bureau of Statistics, Sex Offenses and Offenders 27 (1997); U.S. Dep't. of Justice, Bureau of Justice Statistics, Recidivism of Prisoners Released in 1983, p. 6 (1997))); *Hensler v. Cross*, 210 W. Va. 530, 536, 558 S.E.2d 330, 336 (2001) ("Moreover, sex crimes and sex offender recidivism present real and substantial challenges to law enforcement officers who are charged with protecting the innocent public and preventing crime. We are aware that sex offenders are significantly more likely than other repeat offenders to reoffend with sex crimes or other violent crimes and the tendency persists over time.").

other offenses within the same jurisdiction.[37]  Mr. Hoyle contends that this test cannot be satisfied here because his offense is nonviolent, the legislative purpose of the statute is regulatory rather than penal, and because the punishment is excessive when compared to the same crime in other jurisdictions and to other crimes in West Virginia.  We disagree.

We acknowledge that Mr. Hoyle's present offense is nonviolent in nature. But we disagree with his characterization of the Legislature's purpose.  The statute states that "[i]t is not the intent of the Legislature that the [registration] information be used to inflict retribution or additional punishment on any person convicted of any offense requiring registration under this article.  This article is intended to be regulatory in nature and not penal."[38]  However, the Legislature then went on to explain the compelling interest it has in protecting the public from sex offenders and to impose a harsh punishment for Mr. Hoyle's specific crime.[39]  Specifically, the Legislature imposed a significantly harsher punishment on repeat offenders under the Act than it did on first time offenders.  The punishment for first offense failure-to-register under West Virginia Code § 15-12-8(c) is

---

[37] *Cooper*, 172 W.Va. at 272, 304 S.E.2d at 857 (citing Syl. Pt. 5, *Wanstreet v. Bordenkircher*, 166 W. Va. 523, 276 S.E.2d 205 (1981)).

[38] W. Va. Code § 15-12-1a(a).

[39] W. Va. Code § 15-12-1a(b) ("The Legislature finds and declares that there is a compelling and necessary public interest that the public have information concerning persons convicted of sexual offenses in order to allow members of the public to adequately protect themselves and their children from these persons."); W. Va. Code § 15-12-8(c) (imposing a ten- to twenty-five-year sentence for second and subsequent offenses for failure to register).

only a one- to five-year prison sentence, while a second offense yields a ten- to twenty-five-year sentence. As such, we can only conclude that the Legislature intended this precise punishment for offenses like Mr. Hoyle's in order to serve as a deterrent to repeat offenders and to protect the public from those same individuals.

Next, we compare the ten- to twenty-five-year sentence under § 15-12-8(c) to the corresponding crime in other states. Undoubtedly, many of our sister jurisdictions impose significantly lesser punishments,[40] but other states impose punishments on par with or *greater than* that embodied in our law. Both Texas[41] and Pennsylvania[42] contemplate maximum twenty-year terms for offenders who repeatedly fail to adhere to their respective sex offender registration acts. Meanwhile, Georgia contemplates a maximum of thirty years' incarceration.[43] And, despite a lack of comparable codified penalties, other states have upheld significant sentences for recidivists who fail to properly register as sex

---

[40] Mr. Hoyle references the penalties of our border states: Ohio imposes a two to eight year penalty (OHIO REV. CODE § 2950.99 (West 2011)); Virginia imposes a one to ten year penalty (VA. CODE § 18.2-472.1 (West 2011)); Maryland imposes a maximum five year penalty (MD. CODE ANN, CRIM. PROC., § 11-721 (West 2010)); Kentucky imposes a five to ten year penalty (KY. REV. STAT. ANN. § 17.510 (West 2018)); and Pennsylvania imposes a maximum penalty of twenty years (18 PA. STAT. AND CONS. STATE. ANN. § 4915.1 (West 2018)). But, several states impose an average three to ten years imprisonment. *See, e.g.*, 730 ILL. COMP. STAT. 150/10 (2019) (3 to 14 year penalty as Class 2 felony); N.Y. CORRECT. LAW § 168-t (2007) (two to five year penalty); IDAHO CODE § 18-8311 (2011) (maximum ten year penalty); N.M. STAT. § 29-11A-4(P) (2013) (six year maximum penalty).

[41] TEX. CODE CRIM. PROC. Art. 62.102 (2013).

[42] 18 PA. STAT. AND CONS. STATE. § 4915.1 (2018).

[43] GA. CODE ANN., § 42-1-12(n)(1) (2019).

offenders.[44] In short, though West Virginia is among those states with the strongest punishments for this crime, we do not find that West Virginia is alone or an anomaly warranting interference with the Legislature's reasoned decision to impose this punishment on offenders like Mr. Hoyle.

Turning finally to the comparison of the sentence for second offense failure to update to other crimes in our State, Mr. Hoyle asserts that his sentence is on par with more dangerous crimes like sexual assault in the second degree[45] and bank robbery.[46] We recall at this juncture that the former is the precise crime which gave rise to Mr. Hoyle's obligation to register as a sex offender in the first place. He further asserts that the penalty exceeds that of several more heinous crimes like sexual abuse by a parent, guardian, or custodian,[47] and first degree sexual abuse of a child under the age of twelve by an adult over eighteen.[48] We take care to note that, with the exception of bank robbery, each of the above named offenses is of a sexual nature. These are offenses that our Legislature has chosen to punish in the strongest manner to protect the citizens of West Virginia. Few

---

[44] *See e.g.*, *People v. Nichols*, 97 Cal.Rptr.3d 702, 706 (2009) (upholding 25-year sentence); *State v. Wardell*, 122 P.3d 443 (Mont. 2005) (upholding 25-year sentence).

[45] W. Va. Code § 61-8B-4.

[46] W. Va. Code § 61-2-12(c).

[47] W. Va. Code § 61-8D-5 (ten- to twenty-year statutory penalty).

[48] W. Va. Code § 61-8B-7(c) (five- to twenty-five-year statutory penalty).

crimes in our state carry a harsher punishment than the one given to Mr. Hoyle, but we note that those crimes tend to be crimes of violence against the person.[49]

When taking the above considerations as a whole, we cannot conclude that a sentence of ten to twenty-five years for second offense failure to register is unconstitutionally disproportionate. We do not deny that the act of failing to update or failing to register is, in itself, a nonviolent crime. But we also cannot deny that the Legislature has expressed a clear and compelling interest in protecting our society from the dangers unregistered sex offenders pose. And though the Legislature notes that the purpose of the Act is primarily regulatory, we cannot ignore that it has incorporated numerous harsh criminal punishments for failing to adhere to the Act's requirements in an effort to further the important policy goals that led to its enactment. When examining West Virginia's punishment for this crime in light of the same crime in other jurisdictions, we are mindful that West Virginia's penalty is among the strongest in the nation, but, as stated above, it is not alone nor does it impose the most severe punishment. Even considering other crimes in our state, our Legislature has evidenced a pattern of imposing significant punishments for sexual offenses, and we cannot ignore that the Act's requirements are part of that scheme. So, we have little trouble concluding that the Legislature's chosen penalty for

---

[49] Specifically, we look to crimes such as kidnapping (W. Va. Code § 61-2-14a), murder (W. Va. Code § 61-2-2), and treason (W. Va. Code § 61-1-2), all of which carry penalties of life imprisonment. We note, yet again, that Mr. Hoyle was convicted of one of these (kidnapping) in connection to the same transaction of events that led to his present requirement to register as a sex offender.

second offense failure to register under West Virginia Code § 15-12-8(c) meets our standards of constitutional proportionality, and therefore, we affirm the trial court's sentence in this matter.

## D.     *The Recidivist Life Sentence*

Finally, we turn to Mr. Hoyle's argument that, for reasons similar to those outlined above, his recidivist life conviction is unconstitutionally disproportionate in violation of the Eighth Amendment to the United States Constitution and Article III, Section 5 of the West Virginia Constitution. We apply the same standards of review considered during our analysis of Mr. Hoyle's sentence for second offense failure to update. But, we agree with Mr. Hoyle that his recidivist life conviction is unconstitutionally disproportionate as applied.[50]

West Virginia's recidivist statute, West Virginia Code § 61-11-18(c), provides:

> When it is determined, as provided in section nineteen of this article, that such person shall have been twice before convicted in the United States for a crime punishable by confinement in a penitentiary, the person shall be sentenced to be confined in the state correctional facility for life.

---

[50] We note at the outset that, due the following precedent, we see no need to perform another analysis of the *Cooper* test for the recidivist conviction.

24

Addressing challenges to its constitutionality, we have addressed its application in several other cases. First, in Syllabus Point 7 of *State v. Beck*,[51] we held:

> The appropriateness of a life recidivist sentence under our constitutional proportionality provision found in Article III, Section 5, will be analyzed as follows: We give initial emphasis to the nature of the final offense which triggers the recidivist life sentence, although consideration is also given to the other underlying convictions. The primary analysis of these offenses is to determine if they involve actual or threatened violence to the person since crimes of this nature have traditionally carried the more serious penalties and therefore justify application of the statute.

And, in *State v. Deal*, we noted that "[a]lthough sole emphasis cannot be placed on the character of the final felony, it is entitled to closer scrutiny than the other convictions, 'since it provides the ultimate nexus to the sentence.'"[52]

A discernible pattern emerges from our prior cases that two of the three felonies considered for purposes of a recidivist conviction must be violent in nature to justify the imposition of a life sentence under § 61-11-18(c) in the face of a proportionality challenge. We first expressed this principle in *State v. Kilmer*,[53] where we stated that "even if . . . the predicate felony conviction involves violence, but none of the prior felony convictions involve actual or threatened violence, imposing a recidivist life sentence

---

[51] 167 W. Va. 830, 286 S.E.2d 234 (1981).

[52] 178 W. Va. 142, 147, 358 S.E.2d 226, 231 (1987) (citing *Wanstreet*, 166 W. Va. At 534, 276 S.E.2d at 212). *Accord State ex rel Boso v. Hedrick*, 182 W. Va. 701, 391 S.E.2d 614 (1990).

[53] 240 W. Va. 185, 808 S.E.2d 867 (2017).

violates proportionality."[54]  In that case, we reversed a recidivist conviction where the offender had only a single violent felony, and further noted that the underlying purpose of the recidivist statute is "the imposition of increased confinement for the dangerous criminal who repeatedly commits serious crimes."[55]

This principle is perhaps best illustrated by two recent, similar cases in which this Court arrived at two different conclusions.  First, in *State v. Norwood*,[56] we upheld a recidivist life sentence for an individual whose triggering felony was a conviction for delivering heroin.  The underlying crimes considered in that case were one violent felony and one nonviolent felony.  In our analysis, we determined that heroin trafficking was inherently dangerous due to the drug's often fatal nature on its users, and thus concluded that the offense was sufficiently violent, when coupled with the prior violent felony, to justify a recidivist life conviction.[57]  In contrast, in *State v. Lane*,[58] we were faced with nearly identical facts—one violent and one nonviolent underlying felony—but the triggering felony was the trafficking of Oxycodone.  We reasoned that, unlike heroin, and

---

[54] *Id.* at 189, 808 S.E.2d at 871 (citing *State v. Miller*, 184 W. Va. 462, 400 S.E.2d 897 (1990)).

[55] *Id.* at 187, 808 S.E.2d at 869.

[56] 242 W. Va. 149, 832 S.E.2d 75 (2019).

[57] *See State v. Norwood*, 242 W. Va. 149, 832 S.E.2d 75 (2019) (Walker, C.J., concurring) (noting that the Court did not need to address proportionality in that case due to Mr. Norwood's waiver of that challenge).

[58] 241 W. Va. 532, 826 S.E.2d 657 (2019).

under the facts before the Court, Oxycodone trafficking was not a dangerous felony sufficient to trigger a recidivist life conviction. In both cases, and in several cases prior,[59] we illustrated the need for at least two of the three considered felonies to be violent before we could sustain a recidivist life conviction. As a result, seeing the need for consistency in our law, we hold that, for purposes of a life recidivist conviction under West Virginia Code § 61-11-18(c), two of the three felony convictions considered must have involved either (1) actual violence, (2) a threat of violence, or (3) substantial impact upon the victim such that harm results. If this threshold is not met, a life recidivist conviction is an unconstitutionally disproportionate punishment under Article III, Section 5 of the West Virginia Constitution.

Here, Mr. Hoyle's life recidivist sentence does not survive challenge because of the way the sentencing court considered Mr. Hoyle's prior felony convictions. At the sentencing hearing below, there appeared to be confusion on this point, because Mr. Hoyle's first two felonies—second degree sexual assault and kidnapping—were part of a single plea bargain. We emphasize that these crimes were prosecuted in separate counties, although they arose from the same transaction of events, yet the sentencing court considered them to be a single felony for purposes of the recidivist statute. We do not

---

[59] *See, e.g.*, *Deal*, 178 W. Va. at 147, 358 S.E.2d at 231 (overturning recidivist life sentence where triggering felony was possession of marijuana with intent to deliver and underlying felonies were unlawful wounding and grand larceny); *Boso*, 182 W. Va. at 709, 391 S.E.2d at 622 (overturning recidivist life sentence where triggering felony was night time burglary and underlying felonies were possession of marijuana with intent to deliver and breaking and entering).

decide today whether that determination was in error, rather, we simply note that this is the record before us on appeal. As such, the sentencing court, for purposes of the recidivist conviction, considered Mr. Hoyle's three requisite felony convictions to be: (1) the 1988 convictions for kidnapping and second degree sexual assault; (2) the 2009 first offense failure to register as a sex offender; and (3) the 2015 conviction for second offense failure to update. Without a doubt, sexual assault in the second degree and kidnapping are both violent crimes. Our next question, then, is whether failure to update one's sex offender registry is an offense that involves actual or threatened violence or imposes some substantial impact upon the victim such that harm results.

In Mr. Hoyle's case, although the offense that triggered the registration requirement was certainly violent, his failure to update the registry was not. He violated a regulatory statute by failing to remove an out-of-service phone number and to list a number he was using. That omission does not involve violent acts, nor does it involve threatened violence. First, we struggle to conceive of a scenario in which failing to update one's registry could involve actual violence. Second, while the failure to update may arguably pose a risk of threatened violence because Mr. Hoyle could have committed some overt sexual offense using his unmonitored phone or because law enforcement officers were unable to monitor his whereabouts, such contentions are misplaced. They ignore the fact that any violence threatened would not be part of the failure to update, but part of a separate and distinct crime, whatever that crime may be. Finally, there is no substantial impact imposed on a victim. The victim in this scenario is the State, because Mr. Hoyle is

28

depriving the State of accurate, updated contact information for purposes of the Act. While having that updated information is important to best carry out the intent of the Legislature that law enforcement monitor the activities of sex offenders to protect the public, the lack of that information is not so substantial as to be comparable to actual or threatened violence.

For these reasons, we conclude that Mr. Hoyle's recidivist life conviction, as applied, is unconstitutionally disproportionate. First, in examining the triggering felony—second offense failure to update—it is clear that there was no actual or threatened violence or some substantial impact on the victim. Second, in examining Mr. Hoyle's two underlying felonies, due to the sentencing court's characterization of these felonies, we are compelled to find that there is a single violent (the combined kidnapping and second degree sexual assault) and a single nonviolent (the first offense failure to register) felony. Therefore, under our present holding, because only one of Mr. Hoyle's three considered felonies is violent, his recidivist conviction must be reversed. So, we reverse the circuit court with regard to the imposition of Mr. Hoyle's recidivist life sentence.

## IV. CONCLUSION

For these reasons, we affirm the Circuit Court of Randolph County's rulings with respect to Mr. Hoyle's motions for acquittal, the jury's conviction for second offense failure to update under West Virginia Code § 15-12-8(c), the contested jury instruction, and the statutory ten- to twenty-five-year imprisonment sentence for second offense failure to update. We reverse that portion of the Circuit Court of Randolph County's sentencing

29

order of May 22, 2017, imposing a recidivist life conviction under West Virginia Code § 61-11-18(c).

Affirmed in part and reversed in part.